## CHAPPELL *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MARYLAND.

No. 91. Submitted December 8, 1895. — Decided January 6, 1896.

If a defendant, among other defences, in various forms, and upon several grounds, objects to the jurisdiction of the court, and final judgment is rendered for the plaintiff, and, upon a petition referring to all the proceedings in detail, and asking for a review of all the rulings of the court upon the question of jurisdiction raised in the papers on file, a writ of error is allowed generally, without formally certifying or otherwise specifying a definite question of jurisdiction, no question of jurisdiction is sufficiently certified to this court under the act of March 3, 1891, c. 517, § 5.

Upon a writ of error under the act of March 3, 1891, c. 517, § 5, in a case in which the constitutionality of a law of the United States was drawn in question, this court has power to dispose of the whole case, including all questions, whether of jurisdiction or of merits.

The act of August 1, 1888, c. 728, authorizing the Secretary of the Treasury, whenever in his opinion it will be necessary or advantageous to the United States, to acquire lands for a light-house by condemnation under judicial proceedings in a court of the United States for the district in which the land is situated, is constitutional.

A petition for the condemnation of land for a light-house, filed by the Attorney General upon the application of the Secretary of the Treasury, under the act of August 1, 1888, c. 728, should be in the name of the United States.

The only trial by jury required in proceedings in a court of the United States for the condemnation of land under the act of August 1, 1888, c. 728, is a trial at the bar of the court upon the question of damages to the owner of the land.

THIS was a petition, filed March 21, 1890, in the District Court of the United States for the District of Maryland, for the condemnation, under the act of Congress of August 1, 1888, c. 728,[1] of a perpetual easement in a strip of fast land

---

[1] An act to authorize condemnation of land for sites of public buildings and for other purposes.

SEC. 1. In every case in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to pro-

.on Hawkins Point in Anne Arundel County in the State of Maryland — described by metes and bounds and courses and distances, and as owned by Thomas C. Chappell — for the purpose of transmitting rays of lights, without obstruction, both by day and by night, between two beacon lights, known as Hawkins Point Light and Leading Point Light, theretofore constructed and put in operation by the United States as range lights of the Brewerton channel of the Patapsco River in the State of Maryland.

The petition was in the name of "William Windom, Secretary of the Treasury of the United States and *ex officio* president of the Light-house Board of the United States;" and alleged that under the provisions of section 4658 of the Revised Statutes of the United States the Light-house Board is required to perform all administrative duties relating to the construction, illumination, inspection and superintendence of light-houses, light-vessels, beacons, buoys, and sea-marks and their appendages; that Congress appropriates annually a sum of money for repairs and incidental expenses of light-houses, which is available to pay for the easement aforesaid; and that in the opinion of the petitioner it was necessary and advantageous to the United States to acquire this easement by condemnation under judicial proceedings. The petition was signed by the United States District Attorney, "who

---

cure real estate for the erection of a public building, or for other public uses, he shall be, and hereby is, authorized to acquire the same for the United States by condemnation under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so ; and the United States Circuit or District Courts of the district wherein such real estate is located shall have jurisdiction of proceedings for such condemnation; and it shall be the duty of the Attorney General of the United States, upon every application of the Secretary of the Treasury under this act, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from the receipt of the application at the Department of Justice.

SEC. 2. The practice, pleadings, forms and modes of proceeding, in causes arising under the provisions of this act, shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held, any rule of the court to the contrary notwithstanding. 25 Stat. 357.

appears for the Secretary of the Treasury, the petitioner, by direction of the Attorney General of the United States."

Upon the filing of the petition, the court made an order that a copy be served on Chappell on or before March 24, 1890, and that he show cause on or before April 10, 1890, why the prayer of the petition should not be granted.

On April 9, 1890, Chappell, "saving and reserving all advantages and exceptions whatsoever, prays leave to except to the order" aforesaid; and demurred to the petition, and for cause of demurrer assigned "that there is no authority of law for this proceeding; and also that it is not shown that the Congress of the United States has appropriated or will appropriate more than five thousand dollars to pay for said easement, and that said easement is of a value greatly exceeding five thousand dollars, and whether Congress annually or has ever appropriated a sum of money for repairs and incidental expenses of the light-house, sufficient to pay for said easement, which is applicable therefor; and also that there is no party plaintiff made in said declaration and petition; and also that the laws of the State of Maryland require said proceeding, if the right to any such has accrued, to be conducted in the circuit court for the county where said land is situated, and by the laws of the United States the said laws of the State form the rule of decision in the courts of the United States in this matter; and also that the United States of America has passed no general law or special law, authorizing the petitioner or the Attorney General of the said United States, nor any other person whatsoever, to institute this proceeding, and said proceeding is instituted *ultra vires*, and the said United States cannot be made a party to said suit except by the direction and with the consent of the law-making power, and said power has neither directed the same nor consented thereto."

On May 12, 1890, after argument on the demurrer, the court, by an order reciting that it appeared that the Secretary of the Treasury, and *ex officio* president of the Light-house Board of the United States, had been authorized to acquire this easement for the use of the board, and was of opinion that

it was necessary and advantageous to the United States to acquire this easement by condemnation under judicial proceedings, and had made application to the Attorney General to cause such proceedings to be commenced, overruled the demurrer; and, being of opinion that condemnation of this easement ought to be had by the United States, and that the question of the damages which Chappell would sustain thereby ought to be submitted to a jury, ordered "that, upon a day to be fixed by this court, upon notice to said parties, a jury of this court be empanelled, who shall be duly sworn to justly and impartially value and assess the damages which the said Chappell, as the owner of said land, will sustain by the acquisition by the United States of the easement aforesaid; and that the said jury be empanelled from twenty jurors regularly drawn to serve in this court, from whom each party may strike four jurors, or, if either party refuse to so strike, the court shall strike for him, and the remaining twelve jurors shall be the said jury of inquest to assess said damages. And the said proceeding shall be in such form as that the United States of America and the said Thomas C. Chappell shall be the parties thereto."

On October 28, 1890, in accordance with this order, a jury was duly empanelled in the cause, and was sworn "to truly and impartially value and assess the damages for the condemnation of the said easement over the land at Hawkins Point, in said petition mentioned, and a true inquisition make according to the evidence;" and upon a trial before the court, and after hearing evidence on behalf of the United States, and on behalf of Chappell, and the charge of the court, returned, on November 3, 1890, an "inquisition and award," signed and sealed by the twelve jurors, assessing to Chappell damages in the sum of $3500 for the enjoyment by the United States in perpetuity of the easement aforesaid.

On November 10, 1890, Chappell filed a plea "that the court here ought not to take cognizance of or sustain the action aforesaid, because he says that the cause of action aforesaid, if any accrued to the said plaintiff, accrued to him at Annapolis, within the jurisdiction of the circuit court for

Anne Arundel County, State of Maryland, and not within the jurisdiction of this court."

On November 17, 1890, Chappell filed the following exceptions to the inquisition:

"1st. That the statute under which this proceeding is sought to be maintained is unconstitutional, and this court has no jurisdiction of the subject-matter of this suit.

"2d. That the law-making power of the United States has not authorized any officer to make said United States a party to this suit or proceeding, and this court has no jurisdiction of the subject-matter of this suit, there being a want of power to condemn this property described in this inquisition.

"3d. That the laws of the United States have not been complied with.

"4th. That the damages allowed are inadequate."

On December 18, 1890, the District Court overruled these exceptions, and confirmed the inquisition and award.

On December 27, 1890, Chappell prayed for, and on February 24, 1891, was allowed, under section 633 of the Revised Statutes, a writ of error from the Circuit Court of the United States for the District of Maryland; but never gave bond to prosecute that writ of error.

On December 15, 1891, Chappell presented to the District Judge a petition for a writ of error, under the act of March 3, 1891, c. 517, § 5, in which he mentions all the previous proceedings in the case, (above stated,) and, "in order that said rulings, judgments and orders may be reviewed and reexamined by the Supreme Court of the United States upon the question of jurisdiction raised in said exceptions, pleas and demurrers, and the other papers on file in this cause, and either reversed or affirmed, now prays for the allowance of a writ of error to the Supreme Court of the United States and such other process as may cause said rulings, orders and judgments to be corrected, instead of to the Circuit Court of the United States for the District of Maryland."

A writ of error was thereupon "allowed," in the usual and general form, by the District Judge, and was entered in this court February 27, 1892.

On December 2, 1895, the day before the case was called for argument in this court, the plaintiff in error moved for a writ of *certiorari*, suggesting a diminution of the record in omitting to state that on July 15, 1890, he filed in the District Court a petition for the allowance of a writ of error from the Circuit Court' of the United States.

*Mr. Thomas C. Chappell*, plaintiff in error, in person.

The State of Maryland by an act of the General Assembly of Maryland, Acts of 1874, chapter 395, has expressly given its consent to the condemnation of land for light-house purposes, by the United States. Section 10 provides : " Jurisdiction is hereby ceded to the United States over such lands as shall be condemned, as aforesaid, for their use for public purposes, *as soon as the same shall be condemned*, under the sanction of the General Assembly of this State, hereinbefore given to said condemnation.'"

It must be acknowledged that all the powers of the United States originate in the several States; that 'the States delegated certain rights and reserved certain rights, and that by the Tenth Amendment, those not delegated are reserved. One of these rights reserved was the right to prevent the United States from exercising exclusive jurisdiction in any places, except in the District of Columbia, and in such places as the State might consent to being acquired by purchase. If the State does not see fit to consent, it cannot be compelled to do so ; if it sees fit to consent, that jurisdiction shall be transferred " as soon as the same shall be condemned," that is not a consent to such jurisdiction before said condemnation, and the State cannot be compelled to consent, except on its own terms.

The mode of procedure prescribed by the law of the State and the act of Congress itself has not been followed; a special jury of inquest has been convened, a statutory jury of inquiry. In the case of *Kohl v. United States*, 91 U. S. 367, this court laid down the rule, that a condemnation proceeding is an action at common law. Being an action at common law, the

plaintiff in error is entitled to a trial by a common law jury, and he has not been afforded that trial. A special jury of inquest of damages is a body of men in the nature of commissioners, misnamed a jury. They cannot exercise any of the powers of a common law jury.

The result of this distinction between a special body of assessors of damages, by whatever name they may be called, a jury, commissioners or assessors, and a jury at common law is this, that on appeal from the action of said commissioners or special jury, the party is entitled to a trial *de novo* by a common law jury before the appellate tribunal. *Steuart* v. *Baltimore,* 7 Maryland, 500.

The result of this reasoning is that the plaintiff in error is entitled to such a trial before the appellate tribunal, under the decision of *Steuart* v. *Baltimore, supra,* by jury.

According to the rule laid down in *Tide Water Canal Co.* v. *Arch,* 9 Gill & Johns. 511, the appellate tribunal tries the case *de novo,* the laws of the States being the rule of decision in the courts of the United States, except where repugnant to the Constitution of the United States, this plaintiff in error is entitled to a trial by jury in this court, of the questions of fact raised in the record, according to the course of the common law under the Seventh Amendment to the Constitution of the United States.

This is the result of conferring jurisdiction upon the courts of the United States in this proceeding, which is held in *Kohl* v. *United States,* 91 U. S. 367, by this court, to be an action at common law.

These cases fully establish the principle that where a law secures a trial by jury upon an appeal, it is no violation of a constitutional provision for guarding that right, although such law may provide for a primary trial without the intervention of a jury. This is upon the ground that the party, if he thinks proper, can have his case decided by a jury before it is finally settled. *Steuart* v. *Baltimore, ubi supra.*

The modes in which this power is exercised vary according to circumstances. Sometimes it is initiated by summoning a jury upon warrant, in the nature of an inquest *ad quod dam-*

*num;* at others, boards of assessors are appointed to appraise dues and benefits; with the right of appeal to a court of record, *and* of review by a jury. *Maryland* v. *Graves*, 19 Maryland, 351.

In *Cruger* v. *Hudson River Railroad*, 12 N. Y. 190, it was held that the word "jury" had been used in a number of statutes to describe a body of men who are in fact commissioners or assessors.

The plaintiff in error being entitled to a trial by a common law jury, under Article VII of the Constitution of the United States, has not been afforded that right, because he was not brought into the lower court according to the course of the common law.

The case of *Tidewater Canal Co.* v. *Archer*, *ubi sup.*, demonstrates that a statutory jury of view is not a common law jury, and also lays down the rule that the party is entitled to have a trial before the appellate tribunal by a common law jury, and to try the case *de novo.*

*Mr. Assistant Attorney General Dickinson* for defendants in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The motion for a writ of *certiorari* for diminution of the record, in not stating that on July 15, 1890, the plaintiff in error filed a petition for the allowance of a writ of error from the Circuit Court of the United States to the District Court in which the proceedings were pending, must be denied, for several reasons : 1st. The motion was not made at the first term, as required by Rule 14 of this court, and no satisfactory cause is shown for the delay. 2d. The copy of docket entries, submitted with the motion, while it shows that a petition for a writ of error was filed on that day, does not show that a writ of error was then allowed or sued out; and the plaintiff in error afterwards obtained the allowance of a writ of error from the Circuit Court to the District Court, which he abandoned, and;

instead thereof, applied for and obtained the present writ of error from this court. 3d. The order overruling the demurrer to the petition, and directing a jury to be empanelled, was not a final judgment upon which a writ of error would lie. *Luxton* v. *North River Bridge Co.*, 147 U. S. 337.

The writ of error now before us was sued out from this court to the District Court of the United States for the District of Maryland, under the Judiciary Act of March 3, 1891, c. 517, § 5, which provides that " appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to the Supreme Court in the following [among other] cases : "

First. " In any case in which the jurisdiction of the court is in issue; in such cases, the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

Fifth. " In any case in which the constitutionality of any law of the United States " " is drawn in question." 26 Stat. 827, 828.

In order to bring a case within the first class, not only must it appear of record that a question of jurisdiction was involved in the decision below, but that question, and that alone, must be certified to this court. If both a question of jurisdiction and other questions were before the court below, and a writ of error is allowed in the usual and general form to review its judgment, without certifying or specifying the question of jurisdiction, this court cannot take jurisdiction under this clause of the statute. *Maynard* v. *Hecht*, 151 U. S. 324; *Moran* v. *Hagerman*, 151 U. S. 329; *Colvin* v. *Jacksonville*, 157 U. S. 368; *Davis & Rankin Co.* v. *Barber*, 157 U. S. 673; *The Bayonne*, 159 U. S. 687; *Van Wagenen* v. *Sewall, ante*, 369.

If, indeed, the writ of error is allowed upon the petition of the original plaintiff, asking for a review of a judgment dismissing the action for want of jurisdiction, and the only question tried and decided in the court below was a question of jurisdiction, that question is sufficiently certified to this court. *Lehigh Co., petitioner*, 156 U. S. 322; *Interior Construction Co.* v. *Gibney, ante*, 217. And if an appeal from a decree

of the Circuit Court appointing a receiver is allowed by that court " solely upon the question of jurisdiction," and on a petition praying an appeal from the decree as " taking and exercising jurisdiction," the question of jurisdiction is sufficiently certified. *Shields* v. *Coleman*, 157 U. S. 168.

But in the case, just cited, of *Shields* v. *Coleman*, the essential requisite of the appellate jurisdiction of this court in this class of cases was defined as follows: " It is not necessary that the word ' certify' be formally used. It is sufficient if there is a plain declaration that the single matter which is by the record sent up to this court for decision is a question of jurisdiction, and the precise question clearly, fully and separately stated. No mere suggestion that the jurisdiction of the court was in issue will answer. This court will not of itself search, nor follow counsel in their search of the record, to ascertain whether the judgment of the trial court did or did not turn on some question of jurisdiction. But the record must affirmatively show that the trial court sends up for consideration a single definite question of jurisdiction." 157 U. S. 176, 177.

The record in the present case falls far short of satisfying any such test. The defendant, among many other defences, and in various forms, objected to the jurisdiction of the District Court, because the act of Congress under which the proceedings were instituted was unconstitutional, because the proceedings were not according to the laws of the United States, and because they should have been had in a court of the State of Maryland; and the court, overruling or disregarding all the objections, whether to its jurisdiction over the case, or to the merits or the form of the proceedings, entered final judgment for the petitioners. There is no formal certificate of any question of jurisdiction; the allowance of the writ of error is general, and not expressly limited to such a question; and the petition for the writ, after mentioning all the proceedings in detail, asks for a review of all the " rulings, judgments and orders " of the court " upon the question of jurisdiction raised in said exceptions, pleas and demurrers, and the other papers on file in this cause," without defining or indicating any spe-

cific question of jurisdiction. Here, certainly, is no such clear, full and separate statement of a definite question of jurisdiction, as will supply the want of a formal certificate under the first clause of the statute.

But no question of jurisdiction having been separately certified or specified, and the writ of error having been allowed without restriction or qualification, this court, under the other clause of the statute, above cited, has appellate jurisdiction of this case as one in which the constitutionality of a law of the United States was drawn in question; and, having acquired jurisdiction under this clause, has the power to dispose, not merely of the constitutional question, but of the entire case, including all questions, whether of jurisdiction or of merits. *Nishimura Ekiu* v. *United States*, 142 U. S. 651; *Horner* v. *United States*, 143 U. S. 570, 577; *United States* v. *Jahn*, 155 U. S. 109, 112, 113.

In support of the position that the act of Congress was unconstitutional, reliance was placed on art. 1, sect. 8, cl. 17, of the Constitution of the United States, which provides that Congress shall have exclusive power of legislation " over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings;" and on the statute of Maryland, by which a method is provided for the condemnation, for the use and benefit of the United States, of lands wanted for the erection of light-houses or other public buildings, and jurisdiction is ceded to the United States over such lands " as soon as the same shall be condemned" under this statute. Maryland Stat. 1874, c. 395, §§ 1–13; 2 Public General Laws of 1888, art. 96, §§ 5–17. It was argued that the act of Congress was unconstitutional, because it undertook to confer exclusive jurisdiction on the courts of the United States before purchase or condemnation of the lands in question.

But in the case at bar the question is not of jurisdiction for purposes of legislation, but of acquiring title by judicial proceedings. It is now well settled that whenever, in the execution of the powers granted to the United States by the

Constitution, lands in any State are needed by the United States, for a fort, magazine, dock-yard, light-house, custom-house, court-house, post office, or any other public purpose, and cannot be acquired by agreement with the owners, the Congress of the United States, exercising the right of eminent domain, and making just compensation to the owners, may authorize such lands to be taken, either by proceedings in the courts of the State with its consent, or by proceedings in the courts of the United States, with or without any consent or concurrent act of the State, as Congress may direct or permit. *Harris* v. *Elliott*, 10 Pet. 25 ; *Kohl* v. *United States*, 91 U. S. 367 ; *United States* v. *Jones*, 109 U. S. 513 ; *Fort Leavenworth Railroad* v. *Lowe*, 114 U. S. 525, 531, 532 ; *Cherokee Nation* v. *Kansas Railway*, 135 U. S. 641, 656 ; *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312 ; *Luxton* v. *North River Bridge Co.*, 147 U. S. 337, and 153 U. S. 525 ; *Burt* v. *Merchants' Ins. Co.*, 106 Mass. 356 ; *United States, petitioners*, 96 N. Y. 227.

Nor is it necessary that Congress should itself select the particular land to be taken. In *Kohl* v. *United States*, above cited, it was decided that an act of Congress, authorizing the Secretary of the Treasury to acquire by purchase at private sale, or by condemnation, a site in the city of Cincinnati, " for the accommodation of the United States courts, custom-house, United States depository, post office, internal revenue and pension offices," was constitutional ; and authorized the proceedings for condemnation to be had in the name of the United States in the Circuit Court of the United States under its general jurisdiction of actions at law in which the United States, or any officer thereof suing under the authority of an act of Congress, were plaintiffs.

By the Revised Statutes of the United States, the Light-house Board, under the direction of the Secretary of the Treasury, is entrusted with the discharge of all administrative duties relating to the construction, illumination, inspection and superintendence of light-houses, light-vessels, beacons, buoys, sea-marks, and their appendages ; and is authorized to purchase for the purpose, within appropriations made by Con-

gress, land which does not belong to the United States. Rev. Stat. §§ 4658, 4660. And the act of August 1, 1888, c. 728, under which this proceeding was instituted, authorizes the Secretary of the Treasury, whenever in his opinion it is necessary or advantageous to the United States, to acquire land for the purpose of a light-house by condemnation under judicial process in a court of the United States in the district in which the land is situated. 25 Stat. 357. This act is a constitutional exercise of the power of Congress, according to the decisions of this court, above cited.

The statute of Maryland, above cited, provides that whenever the United States are desirous of procuring the title to any land within the State, "for the purpose of erecting thereon any light-house, beacon-light, range-light, light-keeper's dwelling, forts, magazines, arsenals, dock-yards, buoys, public piers, or necessary public buildings, or improvements connected therewith," and cannot obtain the same by purchase, the United States, by any agent authorized under the hand and seal of any member of the President's Cabinet, may, by petition to the circuit court for the county where the land lies, have the land condemned for the use and benefit of the United States. That statute further provides that the petition shall state the bounds and quantity of the land, the purpose for which the United States desire to obtain title, and the names of the owners, and shall be verified by an affidavit of the agent of the United States; that, after notice to the owner, the court shall hear and determine upon the petition and any objections filed to the proposed condemnation, and, if it shall declare that the condemnation ought to be had, shall issue a warrant to the sheriff to summon twenty jurors, "and from them each party or his agent, or, if either be not present in person or by his agent, the sheriff for said party, may strike four jurors, and the remaining jurors shall act as the jury of inquest of damages;" that the sheriff, before the jury proceed to act, shall "administer to each of them an oath that he will justly and impartially value the damages which the owner will sustain by the use or permanent occupation of the land required by the United States;" that "the jury shall summon such wit-

nesses as the parties may require," and examine them on oath in relation to the value of the land, and reduce the testimony to writing, and ascertain and determine the compensation which ought to be made by the United States to the party owning or being interested in the land to be condemned; and that the jury shall reduce their inquisition to writing, and sign and seal it, and it shall then be returned by the sheriff, together with the testimony, to the clerk of the circuit court for the county; that the inquisition shall be confirmed by the court, if no sufficient cause be shown by the fourth day of the ensuing term, and, when confirmed, shall be recorded; that, if the inquisition be set aside, the court may direct another inquisition in the manner before prescribed; that the inquisition shall describe the land condemned, and state the valuation thereof; and that such valuation, when paid or tendered to the owner, shall entitle the United States to the land, for the use and purposes set forth in the petition.

The only position, other than the denial of the constitutionality of the act of Congress, argued by the plaintiff in error in this court, was that by the statutes and decisions of Maryland the jury which returned the inquisition was but a body of assessors of damages, in the nature of a special jury of inquest, or board of commissioners, and that he was entitled to have the whole case tried anew by an ordinary jury. In support of this position were cited the following cases, decided under different statutes of Maryland: *Tide Water Canal Co.* v. *Archer*, 9 Gill & Johns. 479; *Steuart* v. *Baltimore*, 7 Maryland, 500; *State* v. *Graves*, 19 Maryland, 351. But, however that may be under the statutes of the State, it is not so under the act of Congress.

The direction, in the act of Congress, that the practice, pleadings, forms and modes of proceeding, in cases arising under it, ".shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State," must, as was said by this court in an analogous case, following the decisions under the corresponding provision of section 914 of the Re-

vised Statutes, " give way, whenever to adopt the state practice would be inconsistent with the terms, defeat the purpose, or impair the effect, of any legislation of Congress." *Luxton* v. *North River Bridge Co.*, 147 U. S. 337, 338.

This proceeding for the condemnation of an interest in land, for the use and benefit of the United States for lighthouse purposes, was instituted in the District Court of the United States by the Secretary of the Treasury, acting through the Attorney General of the United States, as authorized by the act of Congress. Having been commenced in the name of the Secretary of the Treasury, it was rightly ordered to be amended so as to make the United States the formal, as they were the real petitioners. *Kohl* v. *United States*, 91 U. S. 367; *United States* v. *Jahn*, 155 U. S. 109, 111; *United States* v. *Hopewell*, 5 U. S. App. 137. The proceeding was conducted in substantial accordance with the provisions of the statute of Maryland upon the same subject, except so far as controlled by the act of Congress under which it was instituted, or by other laws of the United States.

The provision of the Maryland statute, that a petition in the county court shall be verified by affidavit of the agent of the United States, is inapplicable to a petition presented to a court of the United States by the officer designated in the act of Congress. And the provision requiring a sheriff's jury to reduce to writing, and to return to the clerk of the court, the testimony taken before them, has no application to a trial had and evidence taken before the court itself.

The proceeding, instituted and concluded in a court of the United States, was, in substance and effect, an action at law. *Kohl* v. *United States*, 91 U. S. 367, 376; *Upshur County* v. *Rich*, 135 U. S. 467, 476. The general rule, as expressed in the Revised Statutes of the United States, is that the trial of issues of fact in actions at law, both in the District Court and in the Circuit Court, "shall be by jury," by which is evidently meant a trial by an ordinary jury at the bar of the court. Rev. Stat. §§ 566, 648. Congress has not itself provided any peculiar mode of trial in proceedings for the condemnation of lands for public uses. The direction in the act

of 1888, c. 728, § 2, that such proceedings shall conform, "as near as may be," to those "in the courts of record of the State," is not to be construed as creating an exception to the general rule of trial by an ordinary jury in a court of record, and as requiring, by way either of preliminary, or of substitute, a trial by a different jury, not in a court of record, nor in the presence of any judge. Such a construction would unnecessarily and unwisely encumber the administration of justice in the courts of the United States. *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291, 301; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, 209; *Mexican Central Railway* v. *Pinkney*, 149 U. S. 194, 206, 207. This plaintiff in error had the benefit of a trial by an ordinary jury at the bar of the District Court on the question of the damages sustained by him; and he was not entitled to a second trial by jury, except at the discretion of that court, or upon a reversal of its judgment for error in law.

To prevent any possible misconception, it is fit to observe that this case concerns only the taking by the United States, on making compensation to the owner, of an interest in fast land above high water mark; and does not touch the question, argued but not decided in two recent cases, of the right of the United States to take, without compensation, for the purpose of a light-house, land under tide waters. *Hill* v. *United States*, 149 U. S. 593; *Chappell* v. *Waterworth*, 155 U. S. 102.

*Judgment affirmed.*