# WASHINGTON RAILWAY & ELECTRIC COMPANY *v.* NEWMAN.

PLEADING; APPEAL AND ERROR; STATUTES; EMINENT DOMAIN; CONDEMNATION PROCEEDINGS; TRIAL; INSTRUCTIONS; BENEFITS; COSTS; EVIDENCE; BURDEN OF PROOF; SUPERSEDEAS.

1. The signatures of a majority only of the commissioners of the District of Columbia are necessary upon a petition filed in pursuance of the act of Congress of March 2, 1911 (36 Stat. at L. 979, chap. 192) empowering them to institute proceedings to condemn land for widening and extending certain streets.   (Following *Wiegand* v. *Siddons, ante,* 130.)

2. Merely a question of defect of parties, and, therefore, no such jurisdictional question as can be advanced for the first time on appeal, is raised by an objection that it was improper for the assistant engineer commissioner of the District of Columbia, in the absence of the engineer commissioner, to join in a petition for the condemnation of land for street extension.

3. The line fixed for the extension, and not the line of the eastern portion of the street, is the line contemplated by the act of Congress of March 2, 1911 (36 Stat. at L. 979, chap. 192) for the bridge which it authorizes the commissioners of the District of Columbia to construct across a creek "on the line of" a noncontinuous street whose unconnected parts on either side of the creek run on different lines, the statute further authorizing the commissioners to condemn land for

extending and widening the street from the eastern terminus of the portion west of the creek to a point which was east of the western terminus of the eastern portion, upon such lines as the said commissioners might deem best.

4. In determining whether statutes confer the right to exercise the power of eminent domain, the rules of strict construction are to be applied; but when such a power has undoubtedly been conferred by statute, then, in so far as it attempts to define the location or route, it is to receive a reasonable rather than a strict construction;—for it is against common right that a person or corporation should have such a power, but, having the power, it is for the general good that the person invested with it should not be hampered or embarrassed by a narrow and technical interpretation of it.

5. An instruction to a condemnation jury is not objectionable as permitting it to consider future improvements in assessing benefits from street extension, where it states that the jury shall take into consideration the benefits and advantages which the properties may severally receive from the extension, and that by extension is meant establishment, laying out, and completion for all the ordinary purposes of a public thoroughfare. (Citing *Columbia Heights Realty Co.* v. *MacFarland*, 31 App. D. C. 112, and *American Security & T. Co.* v. *Rudolph*, 38 App. D. C. 32.)

6. Congress has power to direct that the whole or any part of the cost of a public improvement in the District of Columbia shall be assessed against the lands benefited.

7. The proposed construction of a bridge as a part of the completed street, may be taken into consideration in assessing benefits from the proposed extension of a noncontinuous street between its disconnected parts, as authorized by the act of Congress of March 2, 1911 (36 Stat. at L. 979, chap. 192), which also provides for bridging a stream which is crossed by the line of the proposed extension; and in proving actual benefits it is competent to admit evidence of benefits based upon the assumption that the bridge will be built and the street opened as contemplated by the statute.

8. It is not error to permit a condemnation jury to consider costs and expenses of the proceeding, concerning which no evidence has been offered, in a proceeding under a statute requiring the amount of damages plus cost and expenses to be assessed as benefits.

9. The expense of the service of necessary stenographers and expert witnesses employed by a condemnation jury is a proper item of costs of the proceeding. (Citing *United States ex rel. Rock Creek Park* v. *Cooper*, 21 D. C. 491.)

10. An objection to the refusal of the court in condemnation proceedings

to permit the jury to hear evidence on the question of costs is insufficient as an objection to the inclusion of improper items of costs, since the whole matter of costs in such proceedings is for the court, as in an ordinary civil proceeding; and unless the objection is properly presented, it will be deemed to have been waived.

11. Nonexpert testimony of interested owners of property in the vicinity of a public improvement is admissible in evidence on the question of the presence or absence of benefits, in proceedings to condemn land for the improvement.

12. Refusal to instruct the jury in condemnation proceedings that the burden of proof as to the existence and amount of benefits is on the plaintiff, was upheld in view of other instructions given and of the fact that the statute required the amount of damages to be assessed as benefits, though the better rule was said to require the instruction to be given. (Citing *Wiegand* v. *Siddons, ante,* 130, and distinguishing *Lynchburg Invest. Corp.* v. *Rudolph,* 40 App. D. C. 29.)

13. An unsuccessful defendant in proceedings under the act of Congress of March 2, 1911, to condemn land for the extension of Q street, in the city of Washington, is not entitled to give a supersedeas bond on an appeal to this court, in view of D. C. Code, Sec. 491 m [34 Stat. at L. 153, chap. 2070] relating to appeals to this court, which provide that no appeal from any order of the court confirming any award of damages or assessment of benefits, nor any other proceeding that may be taken by any person, at law or in equity, against the confirmation of any award of damages or any assessment for benefits, shall delay or prevent the payment of the damages awarded to other persons in respect of the property condemned, or delay or prevent the taking of the property sought to be condemned, or delay or prevent the opening, extension, widening, or straightening of the street.

No. 2585.  Submitted December 10, 1913.  Decided February 2, 1914.

HEARING on an appeal by the defendant from an order of the Supreme Court of the District of Columbia confirming a verdict for the condemnation of certain land for a street extension.                                *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action for the condemnation of certain lands for the extension of the line of Q street in the city of Washington, under an act of Congress approved March 2, 1911 (36 Stat. at

L. 979, chap. 192), which, among other things, provides for an appropriation of $100,000 toward constructing a bridge across Rock creek on the line of Q street, including the approaches thereto, authorizing the commissioners of the District of Columbia to contract for the construction of the bridge and its approaches, and limiting the total cost to $275,000.

The act further provides that "the commissioners of the District of Columbia are further authorized and directed, under and in accordance with the provisions of subchapter 1 of chapter 15 of the Code of Law for the District of Columbia [34 Stat. at L. 151, chap. 2070], within six months after the passage of this act, to institute in the supreme court of the District of Columbia a proceeding *in rem* to condemn the land that may be necessary for the widening and extension of Q street from its terminus east of Twenty-eighth street to Twenty-seventh street, with a width of 60 feet, and from Twenty-seventh street to Twenty-third street with a width of 90 feet, upon such lines as the said commissioners may deem best for the public interest: Provided, however, That the entire amount found to be due and awarded by the jury in said proceedings as damages for and in respect of the land to be condemned for said widening and extension, plus the cost and expenses of said proceedings, shall be assessed by the jury as benefits."

The line of the street extension, as established by the commissioners, extends through the yards of the defendant Washington Railway & Electric Company. The petition for condemnation was filed by Cuno H. Rudolph and Mark Brooke, as commissioners of the District of Columbia. Defendant appeared in said proceedings, without answer, protest, or objection, evidence was adduced before the court and jury, and a verdict accordingly returned. Objections were filed by defendant to the confirmation of the verdict, which were overruled, and an order of confirmation entered by the court, from which this appeal was taken.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan* for the appellant.

Mr. *Edward H. Thomas* and Mr. *James Francis Smith* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The first assignment of error relates to the jurisdiction of the court below. The original petition was filed by the chairman of the board of commissioners and the assistant engineer commissioner, acting in the absence of the engineer commissioner. It is contended that the petition should have been signed by all three of the commissioners, inasmuch as they are not acting in this behalf as commissioners of the District of Columbia, but as a special board authorized by Congress to institute this proceeding. The same question was raised in the case of *Wiegand* v. *Siddons, ante,* 130, where this court held that the action was properly brought by the commissioners, and that it was sufficient if the petition was signed by a majority of the board. It is unnecessary to consider the authority of the assistant engineer commissioner to act in the absence of the engineer commissioner, since no objection was raised to the alleged defect in the court below. But it is insisted that, inasmuch as the objection raises a question of jurisdiction, the matter can be considered here *sui sponte.* The objection does not extend to the jurisdiction of the court over the subject-matter of this action, but only to a defect of parties, and should have been raised by timely objection in the court below. If, indeed, it amounts to a defect of parties, it could have been cured by an amendment substituting the proper parties. *Chappell* v. *United States,* 160 U. S. 499, 40 L. ed. 510, 16 Sup. Ct. Rep. 397. It is not, therefore, such a jurisdictional question as can be advanced for the first time on appeal.

It is urged that, inasmuch as the statute provides for the construction of a bridge "on the line of Q street," the bridge must be constructed on the line of that street as it extends east of Rock creek. It should be remembered that the street, as it approaches the creek from the east, is upon a different line from the same street that has its eastern terminus some four or five

blocks west of the creek. Congress authorized by this act the connection of the termini. The present terminus of the street east of the creek is some distance west of its intersection with Twenty-third street, and the present terminus of the street west of the creek is at its intersection with Twenty-eighth street. What the act directed the commissioners to do was not to condemn a right of way between the extreme termini, but between the extreme terminus west of the creek and the point east of the creek where Q street intersects Twenty-third street. The commissioners were authorized by the act to establish the line between these two points, starting at the eastern terminus of Q street west of the creek, and running north of east to its intersection with Twenty-third street, "upon such lines as the said commissioners may deem best for the public interest." The line of Q street thus selected to be laid out and opened is the only authorized line of said street extending across Rock creek. It follows logically that where the act makes an appropriation for a bridge across Rock creek, and provides for its location on the line of Q street, it can only mean on the line of the street as laid out under the act itself.

It will be observed that the statute did not fix with absolute certainty and precision the location of the bridge. This was deferred to conform to the final location of the street. It is true, as contended by defendant, that the commissioners might use the laid-out portion of Q street extending from Twenty-third street west to the creek bank, construct the bridge across the creek at that point, and then proceed in a southwesterly direction to the eastern terminus of the street west of the creek. But the commissioners, in their discretion, chose another line for connecting the two points, and, in doing so, we think exercised a power clearly conferred by the statute. The statute in this particular should be reasonably construed in order to carry into effect the power of location thus broadly conferred upon the commissioners. "In determining whether statutes confer the right to exercise the power of eminent domain, the rules of strict construction are to be applied. But when the power has undoubtedly been conferred by a statute, then, in so far as it

attempts to define the location or route, it is to receive a reasonable rather than a strict construction. It is against common right that a person or corporation should have the power, but, having the power, it is for the general good that they should not be hampered or embarrassed by a narrow and technical interpretation of it." Lewis, Em. Dom. 3d ed. sec. 390.

The court instructed the jury that, in assessing benefits against the properties found to be benefited, it should take into consideration "the benefits and advantages they may severally receive from the said extension of the said street. By the extension of the street the jury are to understand its establishment, laying out and completion for all of the ordinary purposes of a public thoroughfare." This is assigned as error by defendant, on the ground that it permitted the jury to take into consideration future improvements. The benefits were to accrue from the opening of a street, not from an unimproved strip of land. The object in laying out and opening this street was to make it a thoroughfare for all the ordinary uses of a street, as the term "street" is understood when used in comparison with the manner in which surrounding streets are constructed and used, not taking into consideration future uses to which the street may be subjected, or unforeseen improvements which may result form its construction. This form of instruction has been approved in a number of cases where the language of the act was substantially the same as here. *Columbia Heights Realty Co.* v. *Macfarland,* 31 App. D. C. 112, 217 U. S. 547, 54 L. ed. 877, 30 Sup. Ct. Rep. 581, 19 Ann. Cas. 854; *American Security & T. Co.* v. *Rudolph,* 38 App. D. C. 32.

The assessment of benefits to accrue from the opening and completion of the street as a thoroughfare did not amount to the assessment of benefits to accrue in the future. What was done amounted only to an ascertainment of the benefits which would accrue from the opening of a street where one had not theretofore existed. It was competent for the jury, from the evidence, as well as from their own individual observation, enlightened by their experience, to take into consideration the situation as it would exist when the land condemned had been

converted to the use or uses for which it was being taken. It is within the taxing power of Congress to declare the extent to which the cost of a public improvement shall be assessed as benefits against the property benefited. In *Bauman* v. *Ross,* 167 U. S. 548, 589, 42 L. ed. 270, 288, 17 Sup. Ct. Rep. 966, the court said: "The legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading, or the repair of a street, to be assessed upon the owners of lands benefited thereby. *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. ed. 616; *Hagar* v. *Reclamation Dist.* 111 U. S. 701, 28 L. ed. 569, 4 Sup. Ct. Rep. 663; *Spencer* v. *Merchant,* 125 U. S. 345, 355, 356, 31 L. ed. 763, 767, 768, 8 Sup. Ct. Rep. 921; *Walston* v. *Nevin,* 128 U. S. 578, 582, 32 L. ed. 544, 546, 9 Sup. Ct. Rep. 192; *Lent* v. *Tillson,* 140 U. S. 316, 328, 35 L. ed. 419, 425, 11 Sup. Ct. Rep. 825; *Illinois C. R. Co.* v. *Decatur,* 147 U. S. 190, 198, 199, 37 L. ed. 132, 134, 135, 13 Sup. Ct. Rep. 293; *Paulsen* v. *Portland,* 149 U. S. 36, 37 L. ed. 639, 13 Sup. Ct. Rep. 750. This authority has been repeatedly exercised in the District of Columbia by Congress, with the sanction of this court. *Willard* v. *Presbury,* 14 Wall. 676, 20 L. ed. 719; *Mattingly* v. *District of Columbia,* 97 U. S. 687, 24 L. ed. 1098; *Shoemaker* v. *United States,* 147 U. S. 282, 286, 302, 37 L. ed. 170, 177, 186, 13 Sup. Ct. Rep. 361."

It is insisted by defendant that, in assessing benefits, it was improper to take into consideration the proposed construction of the bridge. The bridge will be part of the street when completed; and the jury, in assuming that the bridge would be built, were speculating upon no different contingency than that the street would be graded. Both were within the contemplation of Congress in providing for the present condemnation, and, without the construction of the bridge, the completion of the contemplated extension of the street would be impossible. It was, therefore, proper for the jury in assessing benefits to take into consideration the bridge as a part of the completed street. It was also competent, in proving actual benefits, to admit evi-

dence of benefits based upon the assumption that the bridge would be built and the street opened as contemplated in the act of Congress.

It is assigned as error that the court permitted the jury to include in its verdict costs and expenses of the proceedings of which no evidence had been offered. The act provided that these proceedings should be had in accordance with the provisions of subchapter 1 of chapter 15 of the District Code [34 Stat. at L. 151, chap. 2070], which requires the court to select a jury of five disinterested men, who, having viewed and examined the premises, may receive and hear such evidence as may be offered, when they shall return a verdict into court, stating the amount of damages and the amount of assessment of benefits. The act authorizing the proceedings in this case required the jury to ascertain the costs and expenses, and add them to the damages, and assess the whole sum as benefits. In such a proceeding, it is impossible to ascertain the total expense until just before making the return, nor is it apparent what testimony could be produced for the enlightenment of the jury. Their compensation is fixed by law at $5 per day. The usual costs are ascertained by certificate from the clerk's office. But, it is asserted, certain illegal costs were incurred for the employment of a stenographer and certain expert witnesses. If necessary, these were proper items to be taxed as costs. *United States ex rel. Rock Creek Park v. Cooper,* 21 D. C. 491. This was a question for the court, and not for the jury. In fact, the whole matter of costs in a condemnation proceeding is for settlement by the court, as in an ordinary civil proceeding. If exorbitant or improper costs have been incurred, it is proper to make a showing to the court, where it can be corrected; but the subject presents no question for the jury. The objection here is that the court refused to permit the jury to hear evidence on the question of costs. As suggested, it was a matter solely for the court, and, if defendant felt aggrieved, it should have presented the matter in the proper way. Not having done so, it will be deemed to have waived objection.

It is objected that the court permitted nonexpert testimony

to go. to the jury as to the presence and absence of benefits. The exception, as set forth in the brief, extends to three witnesses, property owners on the east side of Rock creek in the immediate vicinity of the bridge and the street extension in question. These witnesses were interested property owners, and testified on their own behalf, and not on behalf of the District. It is difficult to understand how these witnesses could have been prevented from appearing on their own behalf and testifying as to whether or not their property would be benefited by the proposed improvement. In this they showed their familiarity with conditions in the vicinity, and, considering their interest, it was not error to allow them to express opinions on the question of benefits.

Error is assigned upon the court's refusal to instruct the jury that the burden of proof was upon the District in establishing whether or not the property of defendant had been benefited, and, if so, in determining the amount of such benefits. The refusal to give such an instruction was held error in *Lynchburg Invest. Corp.* v. *Rudolph,* 40 App. D. C. 129. In the case of *Wiegand* v. *Siddons, ante,* 130, we held the refusal to give this instruction not to constitute reversible error in the light of the other instructions given in the case. After a full review of the instructions given in the present case, and in view of the statute in which Congress fixes the total amount of the benefits as equivalent to the award of damages, we are constrained to sustain the action of the court, although adhering to our holding in the Lynchburg Case that. such an instruction is proper, and should have been given in the present case as the better rule in determining the amount of benefits that should have been assessed against each particular piece of property found to be benefited.

Defendant complains of the action of the trial court in refusing to permit it to give a supersedeas bond. The action of the court was proper under sec. 491m of the District Code, which provides that "any party aggrieved by any final order of the court may appeal therefrom to the court of appeals of the District of Columbia; but no appeal from any order of the court

confirming any award of damages or assessment for benefits, nor any other proceeding that may be taken by any person, at law or in equity, against the confirmation of any award of damages or any assessment for benefits shall delay or prevent the payment of the damages awarded to other persons in respect of the property condemned, or delay or prevent the taking of the property sought to be condemned, or delay or prevent the opening, extension, widening, or straightening of the street, avenue, road or highway" [34 Stat. at L. 153, chap. 2070]. This section was made a part of the procedure in the present case by the act of Congress authorizing this proceeding. If the act had specifically provided a different procedure in this particular, as it did in the assessment of benefits, then the provisions of the Code to that extent would not have been applicable; but no special provision as to bond appears in the act; therefore, we must look to the general provision in the Code.

There are other assignments upon minor matters which need not be reviewed. Finding no reversible error, the judgment will be affirmed. Affirmed, with costs.                    *Affirmed.*