## UNITED STATES v. 11.355 ACRES OF LAND IN DALLAS COUNTY, TEXAS, et al.

Civil Action No. 897.

District Court, N. D. Texas, Dallas Division.

Sept. 23, 1943.

Karl A. Crowley, of Fort Worth, Tex., for the motion.

Frank B. Potter, Asst. U. S. Atty., and A. W. Christian, Sp. Atty., Department of Justice, both of Fort Worth, Tex., opposed.

ATWELL, District Judge.

On September 8, 1943, the United States, under the direction of the Attorney General, at the request of the Acting Commissioner of the Federal Public Housing Authority, filed its petition for condemnation of 11.355 acres of land in Grand Prairie, Dallas County, Texas, under the authority of the Act of August 1, 1888, 40 U.S.C.A. § 257; the Act of October 14, 1940, as amended, 42 U.S.C.A. § 1523 note; Executive Order No. 9070, dated February 24, 1942, 50 U.S.C.A. Appendix § 601 note; the Second War Powers Act, 50 U.S.C.A.Appendix § 631 et seq.; and Executive Order No. 9150, dated April 28, 1942, 50 U.S.C.A.Appendix § 632 note, public funds having been appropriated by Public Resolution 106, 76th Congress, October 14, 1940, and Acts supplementary thereto and amendatory thereof.

The application set forth a shortage of housing "which will impair national defense activities" and that "the F.H.A. has selected a site for housing for persons engaged in national defense activities upon the land described and. involved in this suit." The required map was attached. "That it is necessary, advantageous and to the interest of the United States that the exclusive use of the above described land for one year, with the right to renew from year to year, be acquired by condemnation." "That the immediate possession and exclusive use * * * for the duration of the war emergency as determined by the President, and for three years thereafter, together with the right, title and interest of all parties, in and to all improvements thereon, with the right in the government to alter the surface, or the sub-surface thereof; with the right in the government to demolish any and all improvements; and with the right in the government to remove any improvements placed thereon at the termination of such use." "That said land * * * is necessary and suited to the public use." "That immediate possession of said land is necessary for the successful prosecution of the war."

The appointment of disinterested freeholders as commissioners to appraise and fix the value and the amount of compensation was prayed. Due and proper notice was also asked to the owners.

An order was issued by the court on that same day, directing the owners and holders to deliver up full and complete possession of said lands to the United States, and jurisdiction was retained for further orders, judgments and decrees.

On September 18, 1943, L. J. Goodson and J. W. Singleton filed a motion alleging that they were owners of an undivided 5.735 acres out of the amount taken, and that the same formed the front or east portion of a tract of 13.78 acres owned by them. They allege that they purchased the 13.78 acres for $4,856.50 from Edgar A. DeWitt, who holds a vendor's lien note against the same, payable on June 9, 1944. It also appears that C. W. B. Long is owner of the remainder of the 11 acres.

Goodson and Singleton claim that the taking of the property is in violation of Art. 1, Sec. 10 of the Constitution of the United States, and of the Fourteenth Amendment thereof. They also claim that it violates the Fifth Amendment.

They plead that "there is no shortage of housing, that it is not true that the land was necessary and suited for public use, or that, in fact, it has been taken for public use, but that it is for the use and benefit of private individuals who may win the favor of this federal bureau, the Federal Public Housing Authority." That the land is not necessary for the successful prosecution of the war. That it has a value of $24,770, and that it will have no value if the plaintiff is allowed the use prayed for and until after all demand for such property has ceased.

They ask that the taking order be set aside, and that an injunction issue against the employees of the F.P.H.A. from interfering with their possession. Claimant Long joins in the protest and prayer.

▆ It may be stated at the outset that there is nothing in Sec. 10 of Art. 1 of

the Constitution, nor in the Fourteenth Amendment, that has any relation whatever to proceedings of this sort. The applicable provision of the Constitution is the last sentence of the Fifth Amendment, "Nor shall private property be taken for public use, without just compensation."

Upon the return day of the show cause order, testimony was offered by both the plaintiff and the defendants, and argument was heard upon the issues presented by the pleadings which have been summarily reviewed.

The testimony on behalf of the movants was to the effect that there were lands in that vicinity which could have been taken instead of that which was taken. There was no testimony which indicated arbitrariness, or, capriciousness, or, unfairness. Testimony disclosed that about one hundred and thirty acres were open and unoccupied, within the fenced and locked enclosure of the North American Aviation Corporation, which is a large defense plant near the land in dispute, engaged in the manufacture of war airplanes, and in employing thousands of persons for that purpose. Upon the shifting of the crews of that plant, the highways are congested that run from the plant to the cities of Dallas, Fort Worth, and contiguous neighborhoods. That plant operates under a secret contract with the United States. Its enclosure is locked and guarded. It is for the purpose of furnishing additional housing for the necessary employees of that highly important institution in the prosecution of the war that the land is taken.

The suggestion that there were other vacant lands that could have been taken, instead of the lands that were taken, falls under the weight of its own ballast.

The choice, the location, the necessity, is a matter that is left to the Executive Department. Questions of that sort may not be determined by neighborhood gossip, nor by the private opinion of the citizens of the street. The Congress acted under its authority in the declaration of war, and there is included in that authority the right to prosecute the same to victory. It cannot engage in the manufacture of munitions. It authorizes the making of contracts for that purpose. The makers must have habitations. It authorizes the President, who is the Commander-in-chief of the Army and Navy, to take, either permanently or temporarily, through the F.H.A., either real or personal property for that purpose. The Acts of the Congress and executive proclamations were duly issued.

The machinery of the law will ripen this case by the appointment of commissioners who will appraise the property thus taken and fix "a just compensation" therefor. At that fixing the makers of this motion, and all other persons, will have participation opportunity. If they are not satisfied with the award of the appraisers, they may file exceptions and have a trial before the court, or, before a jury, in open court.

The constitutional guarantee not only fixes a just compensation for private property so taken, but it also requires that the property may only be taken for "public use."

The contention that the use to be made of this property is not for the public, is equally fallacious and foundationless. Prosecution of the war is the public's business. That prosecution is in the hands of constitutional authorities. That only workers and their families in the North American Aviation plant will occupy the houses so erected, is a guarantee of that public use.

The questions presented are not new questions. See Chappell v. United States, 160 U.S. 499, 506, 16 S.Ct. 397, 40 L.Ed. 510; Mt. Vernon-Woodberry Cotton Duck Co. v. Alabama Interstate Power Co., 240 U.S. 30, 36 S.Ct. 234, 60 L.Ed. 507.

The two cases cited in support of the motion, United States v. Certain Lands, 6 Cir., 78 F.2d 684, and United States v. Certain Lands, D.C., 12 F.Supp. 345, are not in point. Those cases determine that the building of low-cost housing and slum-clearance projects under the National Industrial Relations Act, 48 Stat. 195, was not such a "public use" as is contemplated under the Constitution.

The multiplication of words and reasoning can add nothing to the well-considered opinion of the court in those cases. But one can hardly find a parallel between those cases and this case. Here we have a nation fighting for its life. A very inefficient and ineffective fight could be made without the impedimenta of modern warfare. The responsible directing heads of the defensive and offensive movements of the nation take legal steps for the securing of

quarters for those who are to build that impedimenta. That is the end of the argument. The citizen's rights have ample protection in the law. That is all he is entitled to.

The motion and restraint are refused.