UNITED STATES of America,
Plaintiff,

v.

21,250 ACRES OF LAND, MORE OR LESS, SITUATE IN CATTARAUGUS COUNTY, State of New York, The Seneca Nations of Indians, a Body Corporate, et al., Defendants.

Civ. A. No. 7279.

United States District Court
W. D. New York.

Jan. 11, 1957.

John O. Henderson, U. S. Atty., for the Western District of New York, Buffalo, N. Y. (John C. Broughton, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for plaintiff.

Edward E. O'Neill, Gowanda, N. Y. (Charles H. Price, Jamestown, N. Y., of counsel), for defendants.

MORGAN, District Judge.

On January 3, 1957, this court granted an order, ex-parte, of taking, pursuant to the language of section 258a of Title 40 U.S.C.A., of certain Indian land, known as the Allegheny reservation and occupied by the Six Nations; based upon the verified assertion of the Secretary of War that a survey of such lands and others would be necessary for the construction of the Kinzua dam.

Under the statutes of the United States, the court had the inherent power and right to grant an order of taking of possession without notice. If any person who claimed an interest in the fee or any portion thereof of said land was aggrieved thereby, such person had the right to answer within twenty days such order and litigate the question of title. Rule 71A(e) Federal Rules of Civil Procedure, 28 U.S.C.A. While the last sentence of this Rule reads, "No other pleading or motion asserting any additional defense or objection shall be allowed", notice was required to give an opportunity to the Six Nations to formally present its argument. The original informality of the appearance was dispensed with on oral argument on January 8, 1957, when counsel agreed to file such written motion and memorandum as they might be advised, as soon as possible. In the meantime, at the oral request of the court, it was agreed that the engineers would not enter until this decision was rendered, and then only if it were favorable to the petitioner.

Counsel on each side complied, and the attorney for the defendant filed a motion to vacate, asserting that the motion was timely made. As to that point, there is no dispute.

The second point was that the inherent right of eminent domain as to the lands in controversy does not now vest in the United States of America, and will not so vest unless, and until, the Congress of the United States passes appropriate legislation to that effect.

The third ground asserted was "that the order for the delivery of possession sought herein, being supplemental to the inherent right that is lacking, fails of its own accord and is without the power of the court to grant." This is followed by a demand that the order be vacated and the complaint dismissed. It appears that the basic statute enacted by Congress for the purpose of exercising this sovereign power was the Act of August 1, 1888, Chapter 728, Section 1, 25 Stat. 357, 40 U.S.C.A. § 257, which conferred the power to condemn on any officer of the United States who is authorized by statute to purchase, acquire or procure real estate for the erection of a public building or other public use. This act was held to be constitutional in Chappell v. United States, 1896, 160 U.S. 499, 16 S.Ct. 397, 400, 40 L.Ed. 510, as a constitutional exercise of the power of Congress and the Court also disposed of the question of the delegation of legislative power in saying: "Nor is it necessary that congress should itself select the particular land to be taken." 160 U.S. at page 510, 16 S.Ct. at page 400. The Secretary of the Army is authorized to acquire real estate by purchase or condemnation for the improvement of rivers and harbors by Section 591, Title 33 U.S.C.A. as amended. Flood control projects are placed under the jurisdiction of and authorized to be prosecuted by the Department of the Army under the direction of the Secretary of the Army and supervision of the Chief of Engineers by Sections 701a–1 and 701b, Title 33 U.S.C.A. In addition, the Secretary of the Army is authorized and directed to ac-

378

quire all lands, easements and rights of way necessary for any dam or reservoir project or channel improvement or channel reactivation project for flood control by Section 701c-1, Title 33 U.S.C.A.

■■ These statutes conclusively establish the power of the Secretary of the Army to take these lands for flood control purposes, provided Congress has authorized the project. This was done as long ago as June 22, 1936, when Congress by an Act of that date enacted a comprehensive legislative scheme for flood control by Public Law 738, 74th Congress (49 Stat. 1570). Included was the Ohio River Basin, so-called, for a reservoir system for the protection of Pittsburg, Pennsylvania, which system called for the construction of a reservoir for the Allegheny-Monongahela Basin. Various statutes were approved by the Congress (Act of June 28, 1938, Public Law 761, 75th Congress, 52 Stat. 1215, 1217). With House document 306; which discusses in great detail the proposed dam at Kinzua, Pennsylvania, before it, the Congress nevertheless enacted Public Law 228, 55 Stat. 638. The foregoing legislation establishes clearly and convincingly that Congress authorized the construction of the Allegheny dam and reservoir, not only with presumed, but with actual, knowledge of the history of the lands within the Allegheny Indian reservation, and particularly the so-called Pickering Treaty of 1794, and the Proclamation by the Congress of such treaty with the Six Nations on January 21, 1795, appearing in United States Statutes at Large, Volume 7, page 44.

In view of the concession made by the counsel for the defendant, that the sovereign power has the inherent right of eminent domain, we do not labor the point, but reassert such power in the language of United States v. Carmack, 1946, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209.

■ This power of eminent domain extends to Indian tribal lands, as it does to all lands privately owned within the United States. See Cherokee Nation v. Southern Kansas R. Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295, referring therein to Worcester v. Georgia, 6 Pet. 515, 557, 569, 8 L.Ed. 483, wherein Justice McLean said, "in the executive, legislative and judicial branches of our government, we have admitted, by the most solemn sanction, the existence of the Indians as a separate and distinct people, and as being vested with rights which constitute them a state or separate community." The court held that, "that falls far short of saying that they are a sovereign state, with no superior within the limits of its territory." See also United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 and Choctaw Nation v. U. S., 119 U.S. 1, 27, 7 S.Ct. 75, 90, 30 L.Ed. 306, wherein this pertinent language appears, "an Indian tribe * * * was capable under the terms of the constitution of entering into treaty relations with the government of the United States, although from the nature of the case, subject to the power and authority of the laws of the United States when congress should choose * * * to exert its legislative power." The court there held that the argument that the right of eminent domain within the territory of an Indian tribe can only be exercised by it, and not by the United States, except with the consent of the Indian Nation cannot be sustained; and "the United States may exercise the right of eminent domain, even within the limits of the several states for purposes necessary to the execution of the powers granted to the general government by the constitution." [135 U.S. 641, 10 S.Ct. 970.] Specifically applicable here is the language, "It would be very strange if the national government, in the execution of its rightful authority, could exercise the power of eminent domain in the several states, and could not exercise the same power in a territory occupied by an Indian nation or tribe", holding that the lands in Indian territory, like the lands held by private owners everywhere within the geographical limits of the United States,

are held subject to the authority of the general government to take them for such objects as are germane to the execution of the powers granted to it; provided only, that they are not taken without just compensation being made to the owner.

██ The title in this case will not pass until the condemnation proceeding has been completed, at which time, the order of taking, the title, and the just amount of compensation will be subject for review. Thibodo v. U. S., D.C., 134 F.Supp. 88, at page 95; United States v. 44.00 Acres of Land, etc., 2 Cir., 234 F.2d 410, at page 415. Nor can the judiciary substitute its judgment for that of a duly empowered administrative officer; United States v. Carmack, supra [329 U.S. 230, 67 S.Ct. 254], states, "Far removed from the time and circumstances that led to the enactment of these statutes in 1888 and 1926 [40 U.S. C.A. §§ 257, 341], this Court must be slow to read into them today unexpressed limitations restricting the authority of the very officials named in the Acts as the ones upon whom Congress chose to rely."

██ Although the notice to vacate terms the defendants, The Seneca Nation of Indians, a "semi-sovereign body corporate", the treaty of November 11, 1794 cannot rise above the power of Congress to legislate. Moreover, the intent of Congress is plainly shown in the enactment of Chapter 3 of Title 40 as amended, that the issue of title between the United States and the property owner is not a subject of litigation, in proceedings to condemn private property for a public purpose. United States v. Burnette, D.C., 103 F.Supp. 645. As to the plenary power of Congress to dispose of tribal lands without consent of the tribe, see United States v. Creek Nation, 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331; Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299; Cherokee Nation v. Hitchcock, 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183; Shoshone Tribe of Indians of Wind Reservation in Wyoming v. U. S., 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360; United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 58 S.Ct. 799, 82 L.Ed. 1219.

The motion made on behalf of the Seneca Nation of Indians to vacate and set aside the order for delivery of possession hereto and signed the 3rd day of January, 1957, is denied; it being determined:

(1) That the motion to vacate was timely made.

(2) That United States District Courts have jurisdiction in condemnation proceedings over Indian tribal lands as well as the lands of the several states or of private owners.

(3) The District Court has no discretion to question the decision of a public officer, but is required, when a public use is duly asserted, to issue an order of taking.

The temporary stay orally directed by the court on January 8, 1957 is released and the taking, for the purposes indicated in the complaint, is granted to the petitioner upon the filing of this decision.