**UNITED STATES v. CERTAIN LANDS
LOCATED IN TOWN OF HEMPSTEAD,
NASSAU COUNTY, et al.**

Civ. No. 3520.

District Court, E. D. New York.

Oct. 9, 1939.

Court on the 28th day of December, 1938. The petitioner-plaintiff under the power of eminent domain acquired certain land for an addition to Mitchel Field in the Town of Hempstead, County of Nassau. This commission was appointed for the purpose of holding hearings upon the value of the various damage parcels comprising this land. The voluminous report of the commissioners was filed in this Court on July 11, 1939; and the petitioner-plaintiff has made this motion to confirm that report.

Many of the claimants have made no objections to the report. Some have appeared by attorneys in opposition to the motion. Others, upon the return date of the motion, appeared in person to voice their objections; and some wrote letters to the Court setting forth their reasons why the report should not be confirmed.

The Court has carefully considered the report of the Commissioners, as well as the briefs, affidavits and letters submitted in opposition to the confirmation of the commissioners' report. As to the damage parcels where objections have been filed either by briefs, affidavits or letters, the Court has made a personal inspection of these particular damage parcels.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Nathan L. Goldstein, Sp. Asst. to Atty. Gen., John T. Sullivan, of New York City, and Thomas Gallagher, of Brooklyn, N. Y., Asst. U. S. Attys., of counsel), for petitioner-plaintiff.

John L. Bernstein, of New York City, for Nat J. DeBare and Lillian DeBare.

Romano, Gluckstein & Schenker, of Brooklyn, N. Y., for Rina Giacomini and Emma Gregoretti.

Brodsky & Stone, of New York City, for Park Avenue Building Corporation.

John J. Bennett, Jr., Atty. Gen. for State of New York, for People of State of New York.

Eugene R. Hurley, of Mineola, N. Y., for Nassau County and Elizabeth M. Hurley.

John P. McGrath, of Brooklyn, N. Y., guardian ad litem for infant defendants.

Francis D. McGarey, of New York City, for unknown defendants served by publication.

ABRUZZO, District Judge.

This is a motion to confirm the report of the commissioners, appointed by this

## Damage Parcel No. 5 owned by Nat J. DeBare

This claimant objects to the report of the commissioners because he contends their award was insufficient and inadequate and was less than the damages sustained by this particular claimant.

This parcel includes lots Nos. 1 to 43 on Map of Shirley Gardens, filed in the office of the clerk of Nassau County as Map No. 1057. The assessed valuation is $7,840.

$7,100 was the award made by the Commissioners. This property extends along a dirt road, known as Roy Avenue on the map. This road, however, is not physically open and cannot be seen to the naked eye, except for a distance of 200 feet from Fulton Avenue. A view of the property shows the forty-three lots to be one piece of ground.

The claimant sought to prove that this road extends further than the 200 feet. Such a road is marked out on the filed map, but as heretofore mentioned no such road can be seen from a view of the premises. It is uncertain whether Roy Avenue would have ever been extended beyond the 200 feet now existing.

■ The claimant further contends that he had access over the 200 feet of Roy Avenue out to Fulton Avenue for all of his lots by reason of an easement. He sought to introduce into evidence a deed granting him an easement by the owner of Damage Parcel No. 6. This deed was not received in evidence by the Commissioners; but assuming that it had been, the easement would be binding only on the owner of Damage Parcel No. 6. The owners of Damage Parcels Nos. 8 and 10 on the opposite side of Roy Avenue did not join in the granting of this easement over the 200 foot strip to Fulton Avenue. This claimant, therefore, had no valid easement.

This claimant is the owner of lot No. 1 which fronts on Fulton Avenue for a distance of 33.10 feet, the rear of which connects with the remainder of his property. It will thus be seen that lot No. 1 is the only means of ingress and egress to the remainder of the lots.

■■ Unfortunately this claimant, like many others, paid a great deal more for his property than its real value. Nevertheless, he sees no reason why the government should not reimburse him for the full purchase price paid by him. However, this is not the test the commissioners are required to use in awarding damages for the taking of this land.

The claimant is entitled to only the market value of his land. Beyond the 200 feet which is open on Roy Avenue, there are no streets visible. The property looks like acreage as Roy Avenue and the lots in question are only distinguishable by virtue of their being marked out on a filed map. The commissioners could not take into consideration when fixing values that this road might be opened at some time and become a public thoroughfare. However, they included the value of the land which might have been Roy Avenue in their award.

■ The result reached by the Commissioners is just and proper and should not be disturbed.

The application made for costs and allowances based on Section 16 of the Condemnation Law of the State of New York, Consol.Laws, c. 73, is denied in keeping with the more exhaustive decision on this question contained in this opinion relative to Damage Parcel No. 95, owned by Park Avenue Building Corporation.

## Damage Parcel No. 8 owned by Rina Giacomini and Emma Gregoretti

This parcel is owned by the claimants, Rina Giacomini and Emma Gregoretti. An award was made by the Commissioners of $1,311. The property, designated as damage parcel No. 8, consists of two lots located at the northwest corner of Hempstead Turnpike and Roy Avenue. These claimants acquired the property in 1927 for $5,440. It was deeded to them under date of November 20, 1933, after the final payment of the purchase price under an installment contract had been made.

The testimony with respect to the value of this parcel by the real estate appraisers may be summarized as follows:

Claimants' expert................ $3502.80
Government's expert, Matthews..    1143.00
Government's expert, Edwards..      747.81

The assessed valuation is $800.

The claimants attack the report of the Commissioners on two grounds. First, the Commissioners failed to make an award that fully and justly compensated the claimants for the property taken, it being conceded that this Court has full and ample power to review the adequacy of the awards made by the Commissioners. Second, the claimants are entitled to a trial by jury under provisions of the Seventh Amendment to the Constitution of the United States.

■ The first point seems well taken in so far as the claimants agree that this Court has full and ample power to review the adequacy of the awards made by the Commissioners. It is also true that these property owners should be justly and adequately compensated for the property taken. However, the rule to be applied is the fair market value of the land and improvements at the time of the making of the awards by the Commissioners. It is to some extent academic that it is not easy to make this type of determination in view of the fact that within the past eight or nine years there has been no normal market value for the sale of real estate in and about this vicinity.

■ The claimants contend that the award is shocking in comparison with the purchase price of $5,440 and that rather than take the amount of the award, $1,311, they are willing to hold on to the property in order to protect their investment. While this may seem a logical course to pursue,

nevertheless it is not a true test of the manner in which the Commissioners must arrive at the awards they make. The rule for awarding damages is not flexible and must be followed in every instance. To attempt to use any other rule would lead to confusion and disturb the theory of the power of eminent domain.

Unfortunately for the claimants, the three real estate experts called were unable to testify to any great number of sales of property in the vicinity of claimants' parcel since 1926. It is clear from the appraisals made by the real estate experts that either the claimants paid too high a price for the land at the time the installment contract was entered into or that the real estate market took a decided drop. Perhaps, a combination of both these factors took place.

Under these circumstances, the award made by the Commissioners was proper in view of the fact that they allowed the fair market value of the property taken.

As to the second point raised by these claimants, it is contended that the Seventh Amendment to the Constitution of the United States reserves to them the right of a trial by jury. Counsel for the claimants at the beginning of the hearings before the Commissioners made this claim and reserved all rights to a trial by jury under the Seventh Amendment. In support of their contention, the following cases were cited: Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449; Upshur County v. Rich, 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196, and Chappell v. United States, 160 U.S. 499, 16 S.Ct. 397, 40 L.Ed. 510.

In the matter of Kohl v. United States, the question involved was whether a condemnation proceeding was a suit at law so as to give the Circuit Court jurisdiction. It was held that it was a suit at law. The question of a right to a trial by jury was not at issue. The case also held that the Court was not required to give separate trials to each owner interested in the real estate.

Upshur County v. Rich, supra, is not in point because the matter of a right to a trial by jury was not before the Court.

The matter of Chappell v. United States was tried by a jury; but, apparently, the order submitted by the Government to the Court requested and provided for a trial by jury. The question as to whether the plaintiff had a right to a trial by jury was not at issue.

Contrary to the claimants' contention, the Government claims that these claimants are not entitled to a trial by jury as a matter of law and even if such a right did exist, it has been waived.

■ The Seventh Amendment to the Constitution of the United States provides as follows: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

This amendment preserves the right of a trial by jury where it existed formerly at common law.

To properly make this determination it is necessary to inquire into the common law as it existed in England prior to the enactment of the Seventh Amendment to the United States.

As far back as 1541, statutes were enacted whereby compensation was fixed by appraisers or commissioners. Prior to the passage of the Seventh Amendment, various and sundry methods were used in England to fix compensation for property acquired by Eminent Domain. It was generally effected by appraisers or commissioners. 41 Harvard Law Review 29; 11 Virginia Law Review 505.

Neither at common law, nor under colonial statutes was a jury required in the taking of land by Eminent Domain. Congress has apparently not felt itself bound by the Seventh Amendment in so far as condemnation proceedings are concerned. In the District of Columbia, in the early days, various methods were fixed for ascertaining compensation in condemnation proceedings, among them: a jury of 23—2 Stat. 332, 334, § 12 (1805); 12 freeholders—2 Stat. 537, 538, § 4 (1809); by not less than 12 jurymen out of a panel of 24—2 Stat. 539, 541, § 7 (1809).

Four statutes passed by Congress in the same decade authorized condemnation proceedings in the District of Columbia and directed that compensation be fixed by Commissioners. 2 Stat. 569, § 3 (1810); 2 Stat. 570 (1810); 3 Stat. 5 (1813); 3 Stat. 12 (1813).

In 1864, when Congress first authorized condemnation proceedings by the United

States in various states of the Union, the statutes provided for the fixing of compensation by Commissioners. 13 Stat. 50, 13 Stat. 356, 13 Stat. 365.

The enactment of 25 Stat. 357, 40 U.S.C.A. § 258, provided that condemnation proceedings should conform as near as may be to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the state within which said district court is held. In this state, there is no trial by jury in condemnation cases. The Supreme Court of the State of New York sits as a Commissioner without a jury and determines the compensation.

The Mississippi Flood Control Act, 45 Stat. 536, 33 U.S.C.A. § 702d, and the Tennessee Valley Authority, 48 Stat. 70, 16 U.S.C.A. 831x, are illustrations that Congress has proceeded on the theory that a jury trial is not necessary in condemnation cases.

In *Long Island Water-Supply Co. v. Brooklyn,* 166 U.S. 685, 17 S.Ct. 718, 722, 41 L.Ed. 1165, the decision stated: "Neither can it be said that there was not 'due process of law' in these condemnation proceedings. It is not essential that the assessment of damages be made by a jury. Such award may be made by commissioners, at least where there is provision for a review of their proceedings in the courts."

█ The necessary conclusion to be reached is that these claimants under the Seventh Amendment are not entitled to a trial by jury in this proceeding and that the Commissioners had ample authority to make this award.

Claimants have demanded an allowance of 5% for costs and for additional allowances under Section 16 of the Condemnation Law of the State of New York. As more fully set forth in that part of this decision which concerns Damage Parcel No. 95, Park Avenue Building Corporation, owner, this demand is denied.

*Damage Parcels Nos. 95, 99, 109, 118, 122, 123, 133, 137, 139, 145, 154, 158, 164, 167, 175 owned by Park Avenue Building Corporation*

The Park Avenue Building Corporation owned various parcels of land upon part of which they had started to erect certain buildings. The damage parcels and awards are:

| Damage Parcels Nos. | Amounts for Land | Amounts for Improvements | Totals |
|---|---|---|---|
| 95 | $935 | | $935 |
| 99 | 1142 | $200 | 1342 |
| 109 | 8901 | 1200 | 10101 |
| 118 | 3602 | | 3602 |
| 122 | 1360 | | 1360 |
| 123 | 9405 | 3115 | 12520 |
| 133 | 3513 | | 3513 |
| 137 | 2277 | | 2277 |
| 139 | 1634 | | 1634 |
| 145 | 125 | | 125 |
| 154 | 600 | | 600 |
| 158 | 1303 | | 1303 |
| 164 | 461 | | 461 |
| 167 | 450 | | 450 |
| 175 | 440 | | 440 |
| | 36148 | 4515 | 40663 |

The assessed valuation for all of these damage parcels is $26,800.

This claimant alleges that in or about March 1936 it prepared plans for the construction of twenty-six small dwellings on the various damage parcels owned by it. Construction was begun on seven of these houses. In the latter part of April 1936, work ceased and these dwellings were abandoned in different stages of construction. The corporation claims that after this construction was on its way, it learned for the first time from the officials of the War Department that its property was to be involved in this condemnation proceeding. This is the reason for stopping the building operations. The claimant expected to be compensated for the cost of operations and the damage sustained.

The Park Avenue Building Corporation has made a claim for $29,892.90 for the cost, maintenance and expenses incurred in the construction of the building project, exclusive of the value of the land, of which $17,088 represents the alleged value of the building cost of the incompleted structures. The balance of $12,804.90 represents a variety of other items including salaries paid to the officers of the Park Avenue Building Corporation.

The deed under which the Park Avenue Building Corporation acquired title to the property is dated March 26, 1936. This deed contained revenue stamps in the total amount of $12, indicating a consideration not in excess of $12,000. While there is other testimony showing that a greater purchase price was paid, it is unreliable.

The real estate experts testified that $11,-800 was paid for this land. This seems to be correct.

The report of the Commissioners places a value for the improvements of $4,515 as against that of the corporation of $29,-802.90. The Commissioners made an award of $36,148 for the vacant land itself as against the purchase price of $11,800.

The claimant's brief is predicated upon the belief that the Commissioners erred in their report by failing to allow for the expenditures of $29,892.90 incurred by it when they estimated the market value of plaintiff's improvements. Nothing is mentioned by the claimant in connection with the sufficiency of the award on the unimproved land. Apparently, it is satisfied with the amount allowed, viz., $36,148.

■■■■ The Government's contention is that the claimant is entitled to the value of the land and improvements situated thereon at the time of the hearings. This contention is sound. A claimant of improved property is entitled to recover the market value of the property as a single unit, viz., the value of the land plus the amount which the buildings add to the market value of the land itself. Structural cost is not the sole basis of the awards for the improvements. Matter of the City of New York (In re, Blackwells Island Bridge Approach), 198 N.Y. 84, 91 N.E. 278, 41 L.R.A.,N.S., 411, 139 Am. St.Rep. 791; In re Smith Street Bridge in City of Rochester, 234 App.Div. 583, 255 N.Y.S. 801.

■■■■ The claimant contends that it ceased its operations because of the intercession of Government employees who stated that the property was to be condemned. This does not affect the basis of valuation because it is a well-settled rule that the just compensation guaranteed to claimants in condemnation proceedings of this type is measured by the fair and reasonable market value of the property as of the date of taking. Brooks-Scanlon Corporation v. United States, 265 U.S. 106, 44 S. Ct. 471, 68 L.Ed. 934; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236.

In this proceeding, no title has vested as yet; so this rule must of necessity apply.

■■■■ The Park Avenue Building Corporation finds fault with the award for improvements. The claimant testified as to the entire building project without any records of any kind to substantiate its oral testimony. No evidence was adduced to show that the amounts claimed were fair and reasonable. The figures set forth to make up the total of $17,088 were given in bulk without much detail. In the item of $12,804.90 is included office expenses and salaries of officers, the latter amounting to $7,050 alone. Nowhere can the Court find any decisions which indicate that salaries are a proper measure of damages.

The Government's experts appraised these various structures at $3,565. The Commissioners made an award of $4,515 after hearing the entire appraisals. The amount of $36,148, awarded by the Commissioners for the vacant land was based upon the testimony of the experts. Obviously, the Commissioners arrived at the conclusion that the buildings increased the market value of the land to this amount. They took into consideration in reaching this conclusion the improvements placed upon the land. Thus, they accordingly arrived at the value of $4,515 for the structures upon the land. The Commissioners apparently included in the award for the vacant land the value of the improvements which they concluded enhanced the market value of this land.

It is undisputed that the dwellings could not be used and were of no essential value unless they were completed. The land was purchased by the claimant for $11,800. Surely, there can be no contention by the Park Avenue Building Corporation that if the buildings had not been placed upon the land, the Commissioners could have properly arrived at a market value of $36,-148 for this unimproved land.

The findings of the Commissioners must be confirmed because the test of the award is the market value of the land plus the value of the improvements as one item. The amount awarded in this instance is quite sufficient to measure the market value of the property if taken as a unit.

■■■■ A further claim is made by the claimant for an additional allowance of 5% for costs in accordance with Section 16 of the Condemnation Law of the State of New York. The Crest Realty Company, holder of a second mortgage of $11,250 on these damage parcels, appeared in this proceeding to protect its interest and also to except to the report of the Commissioners on the ground that the allowance

424

awarded did not include a 5% fee for counsel for this corporation.

The rule of this Court is that it is without power to assess additional allowance and costs. United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L. Ed. 131; United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887; Carlisle v. Cooper, 2 Cir., 64 F. 472.

*Awards confirmed*

In every instance where an application for costs and additional allowances of 5% under Section 16 of the Condemnation Law of the State of New York has been made, the application has been denied in accordance with the decision given in this opinion concerning Damage Parcel No. 95 et al., owned by Park Avenue Building Corporation.

Settle order.