UNITED STATES v. 26.3765 ACRES OF LAND, MORE OR LESS, SITUATE IN TOWN OF HEMPSTEAD, NASSAU COUNTY, N. Y., et al.

No. 63.

District Court, E. D. New York.

Oct. 24, 1945.

Harry T. Dolan, Sp. Asst. to the Atty. Gen., for plaintiff.

James M. O'Connell, of Mineola, L. I. N. Y., for defendants.

KENNEDY, District Judge.

This is a condemnation proceeding instituted by the United States of America on March 27, 1944, for the purpose of acquiring by eminent domain 26.3765 acres of land, more or less, in the Town of Hempstead, County of Nassau and State of New York. The condemnation petition was filed with the Clerk of the Court on March 27, 1944, and on the same day an order was made and entered granting to the plaintiff, the United States of America, the right to the immediate use and occupancy of the premises. On July 24, 1944, a declaration of taking was filed with the Clerk of this court pursuant to the provisions of the statute. 40 U.S. C.A. § 258a. At that time there was deposited in the registry of the court the sum of $25,000 as the estimated value of the land taken therein. The land sought to be condemned consists of two parcels, one containing 8.6047 acres, the other, 17.-771 acres. (This totals 26.375 acres.) Judgment on the declaration of taking was made and entered on July 26, 1944. This judgment vested title in fee simple to the premises in the United States of America as of the date of filing of the declaration of taking, namely, July 24, 1944. The petition was amended to conform to the description contained in the declaration filed in the court on July 24, 1944.

Parcel No. 1, which consists of 8.6047 acres, lies to the east of Oak Street. It is irregular in shape and character. Parcel No. 2, comprising 17.771 acres, is rectangular in shape and lies west of Oak Street.

I need not discuss the improvements which were on the land. These were old estate buildings, and both sides agree that any award for them should be limited to salvage value.

Immediately adjacent to Parcel No. 1 is Mitchel Field. I took a view of the premises on March 14, 1945, and at that time I saw that airplanes were flying so low over the parcel that they were (as was testified to be customary at the trial) "at tree-top height."

Both sides agree that the best and highest use to which the property could be adapted was that of subdivision and development, and both sides agree that the proximity of the Army air field would have a detrimental influence on its value for this purpose. They could hardly differ on this point. It is difficult for me to imagine a housing development which would not be diminished in value by the flight of these airplanes at such a low level.

There is a threshold question in this case which must be determined. I have said that the petition for condemnation was filed in this court on March 27, 1944. At that time the right to immediate use and occupancy was sought. The declaration of taking was not filed until July 24, 1944. Which date must I use in the determination of fair market value? I believe that I am bound to use the earlier date, namely, March 27, 1944. The claimant does not urge very seriously that such a determination would be erroneous. I should think that I must adopt the earlier date because the filing of a declaration of taking is optional with the Government and purely incidental to the main suit. United States v. Catlin, 7 Cir., 1944, 142 F.2d 781. Hence, if no declaration of taking were filed at all, the only date that could be used would be the date upon which the Government acquired possession. Where the Government takes possession prior to the filing of the declaration of taking it has been the practice to value the property as of the date possession was taken, and to allow interest for the period prior to the deposit of money with the declaration. Seaboard Air Line Ry. v. United States, 1923, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664. In other words, the primary purpose of the declaration of taking is to diminish interest liability. United States v. Miller, 1943, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55. Accordingly, I have used the date March 27, 1944, as the critical date in the case for purpose of valuation. Parenthetically, I may say that there was no substantial change in values between March, 1944, and July, 1944, which undoubtedly accounts for the

fact that the claimant made no great point of the matter I have just mentioned.

■ It is the function of the trial court in cases of this kind to award just compensation. Bauman v. Ross, 1897, 167 U.S. 548, 574, 17 S.Ct. 966, 42 L.Ed. 270; Searl v. School District No. 2, 1890, 133 U.S. 553, 562, 10 S.Ct. 374, 33 L.Ed. 740. The burden of establishing value is on the claimant. Westchester County Park Commission v. United States, 2 Cir., 1944, 143 F.2d 688. Special or unique value to the owner is not to be considered. United States v. Miller, supra.

I turn to the proof which was adduced on the subject of fair market value. Claimant asks that he be awarded the sum of $80,129.50 which is made up of two items, land at $79,129.50 and salvage value of improvements at $1,000. On claimant's analysis the land is valued at $3,000 per acre. The Government contends that the fair market value of the land and buildings condemned is $35,500 which is made up of an item for land ($35,000) and the salvage value of improvements ($500). The Government's valuation per acre is $1,325.

At the trial claimant called two experts. Both testified to substantially the same fair market value (there was a difference between them of some $2,000). Neither gave very satisfactory evidence indicating what the basis of his valuation was. It is not difficult to understand this.

On August 31, 1943, the claimant acquired from the Society for the Relief of the Destitute Blind of the City of New York and Vicinity a tract of land which included parcels Nos. 1 and 2 here in suit. In addition, the tract included the bed of what is now Oak Street. The price paid for the entire tract was $32,000, or roughly $1,000 an acre. On March 14, 1944 (13 days before the filing of the petition in this suit) the claimant executed an option agreement running to Droesch Homes, Inc. The agreement covered 38 acres of land described as the "Bird-Gautier" property. It is quite obvious that the property which was the subject of that option was parcel No. 2 in suit, and, in addition, a tract of land consisting of 20 acres, immediately to the west of and adjoining parcel No. 2. Apparent-ly, on the date the option was executed the tract last mentioned was not in the ownership of the claimant. The price fixed in the option agreement which I have just talked about was $1,300 per acre.

In August, 1944, the 20-acre tract to the west was sold by Bird and another to one Gilbert King. As I have said, it consisted of 20 acres. The price paid was $1,000 per acre.[1]

Faced with the fact that eight months before the filing of the petition there was a transaction, participated in by the claimant himself, at a price of $1,000 an acre for the property, and that five months after the filing of the petition there was another transaction involving adjacent property also at a price of $1,000 per acre, the experts for the claimant fell back upon three other transactions to justify the fixation of a value of $3,000 per acre. As might be supposed, each one of these transactions has unusual features.

■ I have said that included in the parcel acquired by the claimant in August, 1943, of which parcels Nos. 1 and 2 are part, there was also the bed of what is now Oak Street. Sometime in 1943, evidently in the Fall of that year, the State of New York began a proceeding to condemn the land which is now Oak (Arthur) Street. A compromise was effected with the State under which the claimant received $9,475 as an award for damages to parcel No. 1 in suit. This item was included in a payment of $22,500, the difference representing the value of the property taken for the bed of the street. The claimant's experts now say that this fixes a value of $2,500 per acre for the property. Indeed, the claimant goes even further. He says that under the law, since the property was taken by the State of New York as part of a scheme to create national highways, the Government was bound to reimburse the State for what it expended. From this the claimant reasons that the Government is estopped to deny that the fair market value of that property was at least $2,500. I do not pass upon the question whether or not the Government is in fact bound to reimburse the State of New York in connection with this transaction. Whether it it or not, I cannot accept as a principle

---

[1] One of the experts for the claimant lists this August, 1944, transaction as a sale to Pietros, the claimant. How he got this information does not appear. Claimant's attorney stated at the trial that the sale was to one Gilbert King, who is not otherwise identified.

in the establishment of fair market value that much weight ought to be given to compromise agreements of this character. There is no showing whatever that the Government participated in that compromise agreement, and if there were I would still reject it as a guide to value, because it is impossible to tell what led to the making of the compromise. Certainly a value of $2,500 per acre is far out of line with the transactions (participated in by the claimant) which preceded that compromise and which followed it.

The claimant also relies heavily upon a sale of some 15½ acres of land in Hempstead which I shall call the "Powell Farm transaction." The tract involved lies between Jerusalem Avenue and Nassau Road. It is a considerable distance away from the premises in suit. When I took a view of the property I paid particular attention to this tract. The price secured in the July, 1944, transaction was at the rate of $3,000 per acre. The tract is in no way comparable to the premises in suit. It is situated at the intersection of Jerusalem Avenue and Greenwich Avenue, both of which are important highways. It is surrounded by houses of a very modern and pleasant appearance, and it is close to all of the facilities, such as high schools and stores. Its frontage on the two main highways to which I have referred is considerable in extent. It is perfectly possible to see why a builder and developer would pay $3,000 an acre for such a tract. It is impossible to see why he would pay that price or anything like that price for the tract involved in this suit.

The third transaction upon which claimant relies is a sale to Hofstra College of a parcel called "Marvin Gardens." This transaction took place on February 1, 1937. It involved approximately 10 acres, and the price per acre was $4,700. The tract which was the subject of purchase has a frontage on California Avenue, and one of its boundaries is also the southerly boundary line of the Hofstra College site. Again, this tract is a considerable distance from the premises in suit.

One of claimant's experts, who emphasizes this transaction, was nevertheless impelled to say in discussing the sale that the Hofstra College tract "compares favorably with subject property." The fact is that the tract is so situated that if it were to expand the College simply had to buy it. Indeed, in a proceeding to condemn in this Court (United States v. Certain Lands, 43 F.Supp. 418) that very expert testified in substance, that the Hofstra College purchase was made under compulsion, his conclusion being that the College had to pay more than the seller paid for it. He seems to quote with approval a statement of the attorney for the college that in order to expand they had no other way to go than to the south, and that the college authorities thought they had paid an excessive price for the property.

This transaction seems to me to illustrate why a special or unique value to the owner of the property has been rejected as a criterion of fair market value. United States v. Miller, supra.

If these three transactions be ignored, and what might be called the ordinary sales and offers of property in the area analyzed, it is quite clear that the Government's appraisal of $1,325 per acre for the property is more than generous. Claimant in his brief says that the Government's expert put a value of $900 per acre on parcel No. 1 and $1,800 per acre on parcel No. 2. Claimant then demonstrates that if these values be applied to the acreage in each parcel separately, then the total amount of the award ought to exceed $35,500, which is the total supplied by the Government's experts. However, the valuation of $1,325 is an average value, and under the circumstances in the case it seems fair to me to average the value because the Government is taking both parcels as part of one proceeding. The fact that Oak (Arthur) Street separates the parcels does not seem important to me. It is quite obvious that the disparity in the valuation per acre of the two parcels was prompted by the fact that parcel No. 1 is immediately adjacent to Mitchel Field and parcel No. 2 is not.

### Conclusion.

[9] I conclude that on March 27, 1944 (and also on July 24, 1944) the fair market value of the property, which is the subject of this proceeding, was as follows:

Land, at an average price per
   acre of $1,325 ............... $35,000
Salvage value of improvements    500

    Total .................... $35,500.

Submit decree.