**UNITED STATES v. 137.82 ACRES OF LAND IN CHESHIRE COUNTY, N. H., et al.**

**SAME v. 63.62 ACRES OF LAND IN CHESHIRE COUNTY, N. H., et al.**

**Nos. 36, 37.**

District Court, D. New Hampshire.
Feb. 28, 1940.

Alexander Murchie, U. S. Atty., of Concord, N. H., and Leland L. Yost, of Washington, D. C., for petitioners.

Faulkner & Bell, of Keene, N. H., for defendants.

On Plea to Jurisdiction.

MORRIS, District Judge.

On October 20, 1939, the Government filed a petition for condemnation of certain lands in the town of Surry, in the County of Cheshire, State of New Hampshire. The petition states that the Secretary of War is seeking under statutory authority to acquire these lands for the United States because they are necessary in connection with the Surry Mountain Reservoir on the Ashuelot River, a flood control project on the Connecticut River basin.

The petition sets forth the several parcels of land sought to be taken with accurate descriptions of the same, reference to

the statutes authorizing the same and prays that the Secretary of War shall have the right forthwith to take immediate possession of the lands sought to be condemned to the extent of the fee simple interest in order to proceed with the construction and operation of the said flood control project; that due notice of the filing of these petitions and the orders thereon be given to all the parties defendant in this proceeding and for a judgment against the said lands to the sole use and benefit of the United States upon payment into the Registry of this court of just compensation therefor.

On October 20, 1939, the same day the petition was filed, it was ordered that the Secretary of War "shall have the right forthwith to take immediate possession of the lands sought to be condemned herein, to the extent of a fee simple interest therein." It was further ordered that the petitioner give notice of the filing of said petition and the entry of this order and direct all parties defendant to this proceeding to appear before the United States District Court in Concord on the sixteenth day of January, 1940, at ten o'clock in the forenoon, and show cause, if any they have, why the said petition should not be granted. It was ordered that personal service be made on all known defendants and to others by publication in a newspaper published in Keene once a week for three successive weeks, the last publication to be at least one week prior to the day of hearing. Service was made by a deputy marshal in accordance with the order of notice.

On December 20, 1939, defendants filed a motion to dismiss the proceedings, quash return of service and vacate the orders of the District Court on the ground that the Court has no jurisdiction over the defendants in this particular form of action in that it appears that this is a petition for condemnation of certain lands and buildings thereon and that the taking by the United States is predicated upon the consent granted by the State of New Hampshire by Chapter 149 of the Laws of 1939 and that the procedure must conform to Chapter 1, of the Public Laws of the State of New Hampshire, which provides that proceedings be started by a petition to the selectmen of the town within which the property to be taken is situated for an assessment of the damages and if the owner is dissatisfied with the award he may appeal therefrom to the superior court for the

county and the court thereupon shall assess his damages by a jury or other method, as the parties may agree.

The question presented, is whether the method of procedure prescribed by the New Hampshire Statute is exclusive and such as to deprive the Federal District Court of its jurisdiction in proceedings for the condemnation of lands in the State of New Hampshire.

The Government's petitions are based on an Act of Congress approved April 24, 1888, 25 Stat. 94, 33 U.S.C.A. § 591, entitled "Condemnation, purchase and donation of land and materials," which provides that: "The Secretary of War may cause proceedings to be instituted, in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, right of way, or material needed to enable him to maintain, operate or prosecute works for the improvement of rivers and harbors for which provision has been made by law; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted * * *."

By this Act and subsequent Acts of Congress the Secretary of War is authorized to cause proceedings to be instituted in the name of the United States in any court having jurisdiction of such proceedings for the condemnation of lands for flood control.

By an Act of Congress approved July 18, 1918, § 5, 40 Stat. 911, 33 U.S.C.A. § 594, the Secretary of War, upon filing a petition for condemnation, shall have the right to take immediate possession of said lands, provided: "That certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted. * * *"

The declaration of policy relative to flood control is found in the Act of June 22, 1936, 49 Stat. 1570, 33 U.S.C.A. § 701a et seq., which specifically mentions the projects on the Merrimack and Connecticut Rivers.

By the Act of June 28, 1938, 52 Stat. 1215, §§ 7, 9, 33 U.S.C.A. §§ 701b—1, 701f— 1, $375,000,000 was appropriated by Con-

gress in order to effectuate the policy declared in sections 1 and 2 of the Act of June 22, 1936, and to correlate the program for the improvement of rivers and other waterways by the Department of War. This appropriation is to be extended over a five-year period ending June 30, 1944. By an Act approved June 11, 1938, 52 Stat. 670, $82,000,000 was appropriated to be expended for the fiscal year ending June 30, 1939.

From the foregoing it appears that Congress has appropriated money for flood control on the Merrimack and Connecticut Rivers in connection with similar projects in other states and has authorized the Secretary of War to act.

Acts of April 24, 1888; and August 1, 1888.

■ Counsel for the defendants raise the point suggested by Judge Putnam in his opinion in the case of United States v. Certain Lands In Town of Newcastle, C.C., 165 F. 783, that the law of April 24, 1888, above mentioned, under which this proceeding was started, has been superseded by the Act of August 1, 1888, 25 Stat. 357, 40 U.S.C.A. §§ 257, 258.

If by this Judge Putnam intends to infer that the Act of April 24, 1888, has been repealed, or has become ineffective, I cannot agree. The Act of April 24 is limited to the taking of land by the Secretary of War for improvement of rivers and harbors. The Act of August 1, 1888, is more comprehensive and provides for the taking, by the Secretary of the Treasury or any other officer of the Government, authorized so to do, land for any public use. This of course includes the Secretary of War and it follows that he may proceed under either statute. In re Manderson et al., 3 Cir., 51 F. 501, 504; In re Condemnation For Improvement of Rouge River, D. C., 266 F. 105.

My attention is further called to the difference in the language of the two statutes relating to conformity. By the language of the Act of April 24, 1888, proceedings for condemnation are to be prosecuted "In accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." In the Act of August 1, 1888, the proceedings are to "conform, as near as may be" to those of the state in like causes.

In his oral argument, the District Attorney used the language of the Act of August 1, 1888, emphasizing that the proceedings should conform "as near as may be" to the state practice and avoided the use of the language in the Act of April 24, 1888, which reads "in accordance with."

■ It was intimated that the language of the Act of April 24, is more restricted to state procedure than the language of the Act of August 1, but I can see no great difference in effect. They both mean that the state procedure should be adopted to such an extent that the use of it would in no way destroy the ultimate purpose for which the government sought to acquire the land in question.

■ I hold that if the District Court has jurisdiction in the instant cases the actions are properly brought under the Act of April 24, 1888.

General Jurisdiction of District Courts.

28 U.S.C.A. § 41, provides that:

"The district courts shall have original jurisdiction as follows:

"(1) First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue * * *."

■ Condemnation of land is not a criminal proceeding or a suit in admiralty. It is an action of a civil nature and the act above cited vests jurisdiction in the District Courts. This is true unless the United States has surrendered its sovereignty or right of action to the State courts. Weston v. Charleston, 2 Pet. 449, 464, 7 L.Ed. 481; Kohl et al., v. United States, 91 U.S. 367, 23 L.Ed. 449; Beatty v. United States, 4 Cir., 203 F. 620, 623.

New Hampshire Statutes.

The events leading up to the passage of the Act of May 31, 1939, by the New Hampshire Legislature (Session Laws 1939, Chapter 149) and the commencement of condemnation proceedings thereafter in the Federal Court may be of some importance in construing the several acts.

After the disastrous flood of November 1927, followed by the extreme flood of March 1936, the matter of flood control on the Connecticut River and its tributaries became of prime importance. Because of the extensive floods in New England and elsewhere Congress was moved to pass an act (June 22, 1936) declaring a general pol-.

icy relative to flood control. As flood control on the Connecticut River was a matter affecting the several New England states after much agitation a compact was drafted to be concurrently authorized by the legislatures of New Hampshire, Vermont, Massachusetts and Connecticut. The Legislatures of the several states passed the necessary acts, the compact to become effective when authorized by Congress. The New Hampshire act was passed June 30, 1937, Laws 1937, c. 139. By the terms of the compact the fee in the land upon which the flood dams were to be constructed and the land overflowed therefrom was to be taken in the name of the state. The cost of acquiring the land was apportioned among the states, New Hampshire paying five per cent, provided, that the entire project should not exceed $2,700,000. It was a provision of the compact that the dams should be exclusively maintained for flood purposes thereby excluding any construction for power development. Surveys of proposed sites were started under the direction of army engineers and for a time it appeared as though the problem of flood control was about to be solved. However, work stopped suddenly as it became known that Congress would not consent to the expenditure of government money under the terms as set forth in the compact and until the State of New Hampshire had given its consent for the acquisition of land in accordance with the 8th Section of the First Article of the Federal Constitution, U.S.C.A., which reads as follows: "* * * To exercise exclusive Legislation, in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the erection of Forts, Magazines, Arsenals, dock Yards, and other needful Buildings:" Clause 17.

The main points of difference between the Government and the State was the insistence by the Government that the fee in the land of the dam sites and land covered by the pondage be conveyed to the United States and that it should have entire control of the same, including the right to erect power plants if it became advisable so to do.

It was also insisted that no further action would be taken by the Government until the New Hampshire Legislature authorized the taking of the land. This led up to the passage of the Act of May 31, 1939. This Act gave the consent of the State of New Hampshire to the acquisition by the United States of any land, or interest in land within the state required for flood control by purchase, condemnation or otherwise. One of the specific projects mentioned is the Surry Mountain Reservoir.

After the passage of this Act proceedings for the condemnation of land in the Surry Mountain area was begun in this court, October 20, 1939.

There was nothing in the act suggesting any limitation of the power of the Federal Court to proceed with the taking and condemnation of the land except that proceedings under Chapter 74 of the Laws of 1935, as amended by Chapter 26 of the Laws of 1937, shall not apply to the acquisition of land or interests in lands by the United States in accordance with the provisions of this act. The exception applies to the taking of land unfit for agricultural purposes.

The act under which it is claimed the Government should have proceeded is found in Chapter 1 of the N. H. Public Laws. The portion of the act relied on by the defendants is worded as follows: "Notice of Condemnation. In the taking of lands by the United States for any public purpose, by condemnation proceedings, it shall be sufficient notice to all parties interested, if an attested copy of the petition for such taking and order of notice thereon, made by the court or selectmen petitioned, shall be given in hand to, or left at the last and usual place of abode of, all known interested parties residing in this state, and by a like service on all others, or by sending by registered mail a like copy to the last known post-office address of such known interested party, and by publication in such paper or papers and for such times as the court or selectmen petitioned may order." Section 10.

The language of this act, now a part of the Public Laws, appears to have originated in part in the Act of May 21, 1913 (Chapter 196, Laws of 1913).

The Act passed for the purpose of clarifying the laws regulating notice to be given landowners in condemnation proceedings for the taking of land under the Weeks Act

passed by Congress March 1, 1911, 16 U.S. C.A. §§ 480, 500, 513–519, 521, 552, 563, establishing a forest reservation in the White Mountains. The only difference between the act of 1913 and the act above quoted is that the latter provides for notice by the selectmen of the town if the government elects proceed for the condemnation of land through the processes of the State Court.

The conclusion which is stronger than an implication is that when an order is to be issued by a court, it means a court in which the proceedings are pending.

Under the Weeks Act thousands of acres of forest lands in the State of New Hampshire have been taken and condemned through the processes of the Federal Court, notice having been given landowners in accordance with the provisions of Chapter 1, N. H. Public Statutes. This practice has never been challenged.

■ Prior to the compilation of N. H. Public Laws (See Chapter 1, N. H. Public Statutes), proceedings under Chapter 1 seem to have been confined to notice given by the selectmen of the town, but if it was ever the purpose of the New Hampshire Legislature to confine government condemnation to actions brought before the selectmen, such purpose was ineffectual and would not stand the test of decisions of the United States Supreme Court.

It is probably true that most states have passed acts authorizing the condemnation of lands within their borders and providing means for the assessment of damages, but such authority ought not to be held so exclusive as to deprive the Government of procedure in its own courts. The act of condemnation and the act of assessing damages constitute different steps in the taking of land for government purposes.

■ What is a public use is a judicial question. The necessity of taking any particular property for public use is a legislative question. It never could be supposed that Congress would delegate the questions of public use or necessity to a board of selectmen of a town or any other body set up by state statutes to determine the question. A Federal statute displaying such intent would have closely resembled a surrender of one of the sovereign powers of the Federal government because giving such power to the State Legislatures might be so used as to greatly embarrass or even destroy the Federal Government's power of eminent domain.

■ I hold the procedure for the assessment of damages before a board of selectmen is not exclusive and does not conform to the language of the Act of April 24, 1888, wherein proceedings are authorized to be brought in any court having jurisdiction. Whether the actions might have been brought in the Superior Court for the County of Cheshire need not be determined although there is authority to the effect such condemnation proceedings may be brought in either the Federal or State Court.

In the case of Chappell v. United States, 160 U.S. 499, 509, 16 S.Ct. 397, 400, 40 L.Ed. 510, Mr. Justice Gray says: "It is now well settled that whenever, in the execution of the powers granted to the United States by the constitution, lands in any state are needed by the United States for * * * public purpose, and cannot be acquired by agreement with the owners, the congress of the United States, exercising the right of eminent domain, and making just compensation to the owners, may authorize such lands to be taken, either by proceedings in the courts of the state with its consent, or by proceedings in the courts of the United States with or without any consent or concurrent act of the state, as congress may direct or permit."

In the case of Kohl et al. v. United States, 91 U.S. 367, 373, 23 L.Ed. 449 which appears to be a leading case on the question of federal condemnation of land within a state, Mr. Justice Strong says: "The proper view of the right of eminent domain seems to be, that it is a right belonging to a sovereignty to take private property for its own public uses, and not for those of another. Beyond that, there exists no necessity, which alone is the foundation of the right. If the United States have the power, it must be complete in itself. It can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in which it must be exercised. The consent of a State can never be a condition precedent to its enjoyment." United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015; Shannon v. United States, 9 Cir., 160 F. 870; Bragg v. Weaver et al., 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135.

■ Authorities might be multiplied holding that the authority of the United States to condemn land for public use has

not been lessened or abridged by the language of the Act of April 24, 1888, wherein the matter of determining damages in such proceedings are to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted. This is not a delegation of authority to the state.

The power of the Government is complete even though a state failed to prescribe a method for the condemnation of land within its borders or was unwilling to give its consent for the Government to do so. This seems to be well established by the rulings of the Supreme Court in the cases above cited.

Service and Order Transferring Title.

Defendants in their petition pray that the proceedings may be dismissed, the return of service quashed, and the Court's order of October 20, 1939, vacated. It follows that if this court has no jurisdiction the second and third requests of the petition should be granted. But if this court has jurisdiction then it becomes important to examine the question of service and the order of the Court conferring immediate title and possession in the United States.

■ The notice required by the New Hampshire Statutes has been followed to the letter. An accurate description of the land to be taken was set forth by metes and bounds in the Government's petition and a plan of the same left in the office of the Secretary of State and with the Town Clerk in Surry and recorded in the Registry of Deeds for the County of Cheshire. Personal service was made upon all known interested parties and to all others by publishing an attested copy of the citation in the Keene Sentinel for three successive weeks, the last publication to be one week prior to the day of hearing thereon. The service required is sufficient.

■ It is argued that the order conferring title in the United States prior to the payment of just compensation was premature and unauthorized.

Act of July 18, 1918, 40 Stat. 911, § 5, 33 U.S.C.A. § 594, provides that: "Whenever the Secretary of War, in pursuance of authority conferred on him by law, causes proceedings to be instituted in the name of the United States for the acquirement by condemnation of any lands, easements, or rights of way needed for a work of river and harbor improvements duly authorized by Congress, the United States, upon the filing of the petition in any such proceedings, shall have the right to take immediate possession of said lands, easements, or rights of way, to the extent of the interest to be acquired, and proceed with such public works thereon as have been authorized by Congress: Provided, That certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted. * * *"

The words "to the extent of the interest to be acquired" are significant. In the instant cases the interest to be acquired for flood control is the fee in the land.

■ Defendants argue that the above entitled act is repealed or superseded by the Act of February 26, 1931, 40 U.S.C.A. § 258a et seq. The Act itself contains proof that it does not supersede any existing law as section 258d, 40 U.S.C.A., and section 4, of the Act provides as follows: "The right to take possession and title in advance of final judgment in condemnation proceedings as provided by Section 258a of this title shall be in addition to any right, power, or authority conferred by the laws of the United States or those of any State or Territory under which such proceedings may be conducted, and shall not be construed as abrogating, limiting, or modifying any such right, power, or authority."

No money has been paid into court but Congress has made adequate appropriation for carrying on the work at Surry. Act of June 11, 1938, 52 Stat. 670.

It is regrettable that the owners of land to be taken may be ejected from their homes without first receiving a just compensation. The Fifth Amendment of the Federal Constitution, U.S.C.A., provides that private property shall not be taken without such compensation. Whether title to private property may pass to the Government without its owners having first received the remuneration provided by the Constitution is a question.

There is nothing in the Constitution which provides for the payment of just compensation prior to the Government's entry upon the land, but the taking, passing of title, and determination of such

compensation are so inextricably intermingled, that the taking, passing of title, and payment should proceed with expedition. If there is any constitutional question involved it has not been raised or argued in the instant cases and is not before me for determination.

In re Condemnations For Improvement of Rouge River, D. C., 266 F. 105, 113, it is held that: "While private property cannot be taken, even under the right of eminent domain, unless necessary for public use, and then only if just compensation be paid therefor, yet it is not necessary, in the absence of express constitutional or statutory requirements to that effect, that such compensation be paid before the actual taking of the property, provided that reasonably certain, prompt, and adequate provision for the payment of just compensation be made, or the public faith and purse be pledged for such payment."

It is held in the case of Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64, 64 L.Ed. 135, "that where adequate provision is made for the certain payment of the compensation without unreasonable delay the taking does not contravene due process of law in the sense of the Fourteenth Amendment [U.S. C.A.Const.] merely because it precedes the ascertainment of what compensation is just." Crozier v. Fried Krupp, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771; Adirondack Railway Co. v. People, 176 U.S. 335, 20 S.Ct. 460, 44 L.Ed. 492; Cherokee Nation v. Southern Kansas Railway Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295.

### Conclusion.

While the oral arguments took rather a wide range, the real question raised by the defendants' motion is that of jurisdiction of this court to proceed with the condemnation of land for the Surry Mountain Reservoir. I am not called upon in this proceeding to determine the precise method of assessing the damages. The defendants' motion does not raise that question.

In determining just compensation all that is required is that it shall be conducted in some fair and just manner with opportunity to the owners of the property to present evidence as to its value and to be heard thereon. The only limitation is that the process of assessment be in conformity to state laws in assessing damages in condemnation cases, for public purposes of the state. As there are several provisions for assessment of damages found in the state statutes and no one is specifically mentioned, it means, as Judge Putnam has said in the case of United States v. Certain Lands in Town of New Castle, C.C., 165 F. 783, 787, "The statutes as a whole are to be looked through, and that, where those statutes are not harmonious with reference to details, the proceedings in the federal courts are to be in accordance with the underlying spirit of the whole of them."

The machinery of the Federal Courts, acting within the spirit of the state laws, is ample to secure to the defendants a fair and just appraisal of their damages.

I hold that this court has jurisdiction.

The orders made by this Court October 20, 1939, are affirmed.

The defendants motions are denied.