**UNITED STATES v. A CERTAIN TRACT OR PARCEL OF LAND IN CHATHAM COUNTY, GA., et al.**

No. 155.

District Court, S. D. Georgia, Savannah Division.

March 30, 1942.

J. Saxton Daniel, U. S. Dist. Atty., and Green B. Everitt, Asst. U. S. Atty., both of Savannah, Ga., and Joseph F. McPherson, Paul D. Page, Jr., Robt. R. MacLeod, and Daniel W. Gaiser, all of Washington, D. C., for the United States.

Edmund H. Abrahams, of Savannah, Ga., J. H. Orgill and E. J. Phillips, both of Cleveland, Ohio, and Chas. H. Griffiths, of New York City, for respondents.

LOVETT, District Judge.

On January 3, 1942 a petition was filed in this court by the United States to condemn certain described lands and structures, interests therein and appurtenances thereto, setting out in the petition the several acts of Congress under which the proceedings were instituted.[1] On the same day the court ex parte entered an order granting leave to the petitioner to take immediate possession of the lands and structures, the order reciting it had been made to appear to the court that the United States of America "had made certain and adequate provision for payment of just compensation to the parties entitled thereto." Possession was taken immediately under this order. The lands and structures involved are a shipyard in course of construction. Savannah Shipyards, Inc., claiming the property in fee, has appeared and moved to vacate the order as improvidently granted without notice and contrary to law, denies that adequate or certain provision has been made for just compensation, and urges, alternatively, that if the order is not vacated and the property restored to the owner, the United States Maritime Commission, at whose request the government acted in filing these proceedings, be required to pay the estimated compensation into the registry of the court.

This motion was heard on March 14, after which briefs of counsel were received.

---

[1] 40 U.S.C.A. § 257, 25 Stat. 357; Act of Feb. 6, 1941, Public No. 5, c. 5, 46 U.S.C.A. §§ 1119a, 1119b, 1125a, 1214; Act of March 11, 1941, Public No. 11, c. 11, 22 U.S.C.A. § 411 et seq.; Act of March 27, 1941, Public No. 23, c. 30, 55 Stat. 53; Act of May 2, 1941, Public No. 46, c. 84, 46 U.S.C.A. § 1152 note, preceding § 1211 note, § 1195 note, preceding § 1251 note.

The contention of the United States is that since the Declaration of Taking Act of 1931 [2] has not been invoked in this case, the alternative relief sought should not be granted, saying that the socalled "basic act" of 1888 [3], under which the proceedings were instituted, requires neither prepayment nor deposit of the compensation in advance of taking when the public faith and credit are pledged to a reasonably prompt ascertainment and payment and there is adequate provision for enforcing the pledge. It is also urged that the order awarding possession should not be vacated because it was not improvidently granted, the necessity for the public use being an administrative and not a judicial question [4], settled by the action of the Maritime Commission. Two Acts of Congress appropriating large amounts to the Commission for the building of vessels, acquisition, construction, etc., of plants or facilities on land to be used for the construction of ships, forts, equipment, supplies or material therefor [5], are pointed to as constituting certain and adequate provision for the payment of just compensation, and from these appropriations it is said funds are available to pay the final award that may be made.

The defendant shipyard replies that a general appropriation act of several hundred millions of dollars for acquisition or construction of shipyards and the like, with no specific allocation of funds to this particular enterprise, is not a certain, sufficient or adequate provision for the payment of just compensation, and does not mean that funds will be available to pay the final award, as they may be exhausted elsewhere; that the Government is exercising dominion over the property as a complete owner by demolishing buildings and doing other construction work in advance of acquiring title, and that, therefore, the order granting leave to take possession was improvident; that a deposit of the estimated just compensation, or an award and pre-payment, before assuming the rights of an owner is a necessary condition

precedent, particularly because under section 2 of the Act of 1888 [6], the practice, pleadings, forms and modes of procedure shall conform, as near as may be, to the practice in the state courts of record, and under the law of Georgia payment is required before either possession or title can be lawfully acquired. [7]

On the oral argument of this motion counsel for the Government was asked why the Act of February 26, 1931 [8], under which on deposit of the estimated just compensation title immediately vests, was not utilized in this case, and the answer was that the property to be condemned consisted of a shipyards in course of construction and the Maritime Commission was unable at the time the petition was filed to make an estimate of just compensation, and that even now—two and a half months later—the appraisers had not completed their estimates. Upon further inquiry it developed that the appraisement probably would be completed by April 20th, and thereupon the case was assigned for trial by jury on the issue of compensation for April 22nd, the defendant insisting upon an early trial. Thus it appears there will be no unreasonable delay in determining what compensation shall be paid, as presumably a final award can be made on the date fixed for trial, within less than four months after the taking of possession by the United States.

The motion to vacate the order granting leave to the United States to take immediate possession of the property should not be granted, and the alternative relief asked should be denied, at this time. An early trial to fix an award of compensation to the owner and others at interest will relieve some of the injustices and inconveniences that otherwise might result from the sudden taking of the property by the Government. However, in my opinion, for the reasons I shall give, the Maritime Commission should on or before the date fixed for trial in the court offer some formal evidence showing that a stated and fixed sum of money has been allocated by

---

[2] Act of Feb. 26, 1931, 40 U.S.C.A. § 258a–258e.

[3] 40 U.S.C.A. § 257.

[4] See Rindge Company v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; Barnidge v. United States, 8 Cir., 101 F.2d 295(13) and cases

cited; United States v. Meyer, 7 Cir., 113 F.2d 387.

[5] Act of Feb. 6, 1941, Public No. 5, c. 5; Act of March 27, 1941, Public No. 23, c. 30.

[6] 40 U.S.C.A. § 258.

[7] Georgia Code (1933) §§ 36-301, 36-302.

[8] 40 U.S.C.A. § 258a.

the Commission for the acquisition by condemnation or otherwise of the property to be condemned, and also that these proceedings will not be abandoned or a dismissal asked before complete title is acquired. A letter from the Chairman when filed in the cause will suffice.

The right or power of eminent domain is an attribute of sovereignty, inherent therein as a necessary and inseparable part thereof, and antedates, and therefore exists independently of, constitutions and statutes[9]. All private property is held subject to the necessities of government. These necessities are accentuated in times of war or other great national emergency. The right of eminent domain underlies, and at the same time is superior to, all rights of private property. The Fifth Amendment is in recognition of this sovereign right, and instead of being a grant of power is a limitation on its use, viz, that just compensation be made. The amendment does not say when the compensation shall be made. Nor do the federal statutes invoked. In the absence of constitutional or statutory requirement the general rule is that pre-payment of the price is not necessary before the taking or occupation, if due provision for payment and for the means by which the landowner may make his claim and receive compensation or damages is made.[10] If that which is done by the national government constitutes a taking the property owner can recover just compensation under the Tucker Act[11] in an action at law as upon an implied contract imposed by the Fifth Amendment[12]. It has been held that where the Government takes possession and appropriates the property prior to the entry of judgment in condemnation, the judgment is an obligation of the general fund of the Treasury[13].

But the defendant says there must be conformity with the state law as to the practice and modes of procedure, and the Georgia law expressly provides for payment or tender before the taking[14]. Section 2 of the Act of 1888[15], like the older conformity statute[16] now largely superseded by the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, only requires conformity "as near as may be", and must give way whenever to adopt the state practice would be inconsistent with the terms, defeat the purpose or impair the effect of any legislation of Congress[17]. Pre-payment is a matter of substantive law and as here sought to be set up as a barrier to further proceedings in this case goes to the existence of the cause of action. It is not a procedural rule by which this court is bound[18].

It is recognized by the court, as well as by the parties, in cases of this kind certain and adequate provision should be made for the final payment, after an award, of just compensation to the persons whose property is taken, and it should be made to appear that funds are or will be available to pay the award when made. In behalf of the United States it is said the two appropriation acts already mentioned are sufficient authority for the prosecution of the work and amount to a pledge of the faith and credit of the Government. Where the appropriation is for a specific project, i. e., the taking of a particular site for a post office, or the improvement of a designated river, it has been held that the Act of Congress is a sufficient pledge of the faith and credit of the United States[19]. It also has been held that where a large appropriation was made en bloc by Congress for previously authorized projects, a letter from the Secretary of War to the effect that funds were then

---

9 James v. Dravo Contracting Co., 302 U.S. 134, 147, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; 29 C.J.S., Eminent Domain, §§ 2, 3.

10 Liberty Cent. Trust Co. v. Greenbrier College, D.C., 50 F.2d 424, 429; Sweet v. Rechel, 159 U.S. 380, 16 S. Ct. 43, 40 L.Ed. 188; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 677, 43 S. Ct. 684, 67 L.Ed. 1167; Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637.

11 28 U.S.C.A. § 41(20).

12 Hurley v. Kincaid, note 10; Jacobs et al. v. United States, 290 U.S. 13, 16,

54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1.

13 United States v. Meyer, 7 Cir., 113 F.2d 387, 388, 393; Barnidge v. United States, 8 Cir., 101 F.2d 295, 298.

14 See note 7.

15 40 U.S.C.A. § 258.

16 28 U.S.C.A. § 724.

17 Chappell v. United States, 160 U.S. 499, 512-514, 16 S.Ct. 397, 40 L.Ed. 510.

18 See United States v. Meyer, 7 Cir., 113 F.2d 387, 388, 394.

19 See Commercial Station Post Office v. United States, 8 Cir., 48 F.2d 183; United States v. 137.82 Acres of Land, D.C., 31 F.Supp. 723, 725.

available for paying the award in condemnation was sufficient assurance [20]. Injunctions against public improvements have been refused where an appropriation is made for a general plan or project and the courts have decided damages need not be paid as a condition precedent to the Government's proceeding with construction [21]. The instant case may be distinguished. A shipyard in course of construction designed primarily for use in the emergency of war, and dependent for its existence on contracts for vessels urgently needed at this time for national defense or offense, may become entirely valueless when the emergency has passed, and possession by an agency of the United States without the taking of title for too long a period may cause irreparable loss to the owner unless it is made sure that the faith and credit of the government is properly pledged. Conceivably, the Maritime Commission might exhaust all the funds appropriated by Congress on other projects, and be forced to abandon this one. A suit under the Tucker Act might turn out to be no adequate remedy. There is no good reason, in my opinion, why the Commission should not allocate and ear-mark some stated amount of money, an estimate and on incomplete information though it may be, for the acquisition of the land and structures of the shipyards to be condemned in these proceedings or otherwise acquired.

▪ It may be that after actual possession of property in condemnation has been taken and an appropriation of it to the condemnor's use, the proceedings can not be abandoned or discontinued [22], though generally in the absence of statutes otherwise prescribing until the taking the condemnor may discontinue or abandon his effort [23]. In the Barnidge case—cited in note 13—the Circuit Court of Appeals for the Eighth Circuit held that where possession of the property was not taken at or prior to the institution of condemnation proceedings, the proceedings might be abandoned at any time before the actual acceptance of the property and payment therefor. The Government, the court said, "is not bound to take the land or to pay the award" [24]. There is some conflict of opinion as to when the rights of the parties vest or the taking becomes complete so as to preclude voluntary dismissal or abandonment of the proceedings [25].

▪ The defendant asks for some irrevocable commitment from the head of an executive department to pay the ultimate award, expressing the fear that before the final vesting of title in the United States some change of policy in the Maritime Commission may bring about a discontinuance of these proceedings. I have no reason to assume the Commission will not go forward with the utmost good faith. It seems only fair, however, and I shall require, that the proper agency of the United States file in this court before the trial to determine compensation an assurance that there will be no abandonment or effort to work a voluntary dismissal of these proceedings before title vests in the United States. There is no good reason why a commitment to this extent, at least, should not be given now.

Much stress has been laid by the defendant on certain expressions of Mr. Littell and Mr. Nichols, Jr., of the Lands Division, Department of Justice, in their writings touching these subjects. While as said by Mr. Littell in his "Expropriation of Property for National Defense", there is no express statutory provision for the taking of possession by the Government prior to the ascertainment and payment of just compensation (except as to the Secretary of War in certain cases) [26], no express legislation is needed, for if the power to acquire the entire fee title is admitted—as it is here—the possession, a lesser right, is implied without limitation as to when possession may be taken [27].

[20] United States v. Meyer, 7 Cir., 113 F.2d 387, 392, 393.

[21] Ryan v. Chicago, B. & Q. R. R., 7 Cir., 59 F.2d 137, 144.

[22] See 30 C.J.S., Equity, § 335, note 42.

[23] Danforth v. United States, 308 U.S. 271, 283, 60 S.Ct. 231, 84 L.Ed. 240; 30 C.J.S., Equity, § 335, note 41.

[24] See cases cited in Barnidge v. United States, 101 F.2d at page 298.

[25] See 30 C.J.S., Equity, §§ 335–338, notes 40 to 68.

[26] After this opinion was prepared, and when ready for announcement, I learn that the President has approved the Second War Powers Act of 1942. See U. S. Law Week, Vol. 10, No. 37, March 24, 1942. By section 201 of Title II, 50 U. S.C.A. § 171 note, 50 U.S.C.A. Appendix § 632, express power for taking possession in circumstances like these seems now to have been granted.

[27] Commercial Station Post Office v. United States, 8 Cir., 48 F.2d 183, 184.

Nor am I impressed in this case with the relevancy of Mr. Littell's statement that if authority to take immediate possession can be implied, it would be of little value in many instances because R.S. § 355, 33 U.S.C.A. § 733, requires the Attorney General of the United States to certify the title before funds can be expended on construction. By section 2 of the Act of February 6, 1941, Public No. 5, c. 5, under the authority of which, among other Acts of Congress, this proceeding was begun, the Maritime Commission is authorized to carry on its objects, activities and functions without regard to that section of the Revised Statutes.

An order may be prepared by counsel for the United States, and, on notice, presented on or before April 22nd, 1942, to carry this opinion into effect.