**UNITED STATES of America**

v.

**Mrs. Pearl Cash IVIE, Morgan Cotton, Thomas R. Sellers, Crawford Irvin, Shelton Gailey and Jack Irvin.**

**No. 731.**

United States District Court
N. D. Georgia,
Gainesville Division.

Nov. 7, 1957.

James W. Dorsey, U. S. Atty., and Charles D. Read, Jr., Asst. U. S. Atty., Atlanta, Ga., for the United States.

Jeff Wayne and Telford, Wayne & Smith, Gainesville, Ga., and R. C. Scott, Cornelia, Ga., for defendants.

SLOAN, District Judge.

In this action the Government seeks to enjoin the defendants from trespassing on certain lands of the Chattahoochee National Forest to which it claims title. By separate count the Government also claims damages for timber allegedly cut by the defendants on the Government's property.

The defendants file their answers denying claimant's title. The defendant Pearl Cash Ivie asserts a claim to the property while the other defendants cut the timber in question under her claim and by her permission. A temporary restraining order was issued by the Court on April 22, 1957.

The case was tried to the Court without a jury.

It was stipulated that all papers in connection with Civil Action No. 198, the same being a proceeding in rem, by the Government, in this Court under which it claims title to the property in dispute, be a part of the evidence in the case.

It was further stipulated that the value of the timber cut by the defendants is $410.10.

Both parties introduced testimony and documentary evidence and it was agreed that all motions would be considered at the close of all the evidence.

After considering the evidence, the Court makes the following

Findings of Fact

In 1937 by Civil Action No. 198, of which this Court takes judicial notice, the Government sought to condemn several tracts of land. One of said tracts, and the one here involved is described as Bank of Clayton Tract No. 18, the tract is more particularly described in said condemnation suit as follows:

"That certain tract or parcel of land, in 752 District G.M., described as follows: Bounded on the north and west by the lands of Alpha Cash, W. B. Ellard, and ——— Wagonblas, on the east by the lands of W. H. Kimzey, C. S. Stephens, Mrs. R. F. Stephens, and Mary Lane; and on the south by the lands of Mary Lane, being the same lands described in Deed Book A–13, Pages 25–7, and Deed Book A–4, Pages 49–50, Clerk's Office of the Habersham County Superior Court (and more particularly delineated upon a map or plat marked Exhibit "A" attached to the petition) lying and being in Habersham County, Georgia, containing 442.48 acres."

Timber was cut by the defendants from the above described tract of land, the value of which is stipulated by the parties to be $410.10, the cutting being from land delineated upon the map or plat marked Exhibit "A" and attached to the condemnation petition.

In Action at Law 198 the Court entered an order on April 9, 1938 providing in part:

"It is found, adjudged and decreed that all parties directed to be served, have been duly served, and that all directions heretofore given, have been complied with, including the appointment of the guardian ad litem, viz.: the Ordinary of Habersham County, Georgia, Frank E. Gabrels, Esquire, and including the publication of the notice as directed in the order of December 18, 1937, in the 'Tri-County Advertiser', of Clarkesville, Habersham County, Georgia, on the 31st day of March, 1938, all of which publication was and is in accordance with the law,

"Thereupon all parties defendant in said cause, having been duly notified, are deemed parties to the cause; and it is so adjudged and decreed, and said order is in order for final disposition; * * *."

The original order of service in Action at Law 198 entered by the Court on December 18, 1937, provided in part as follows:

"For the information and protection of all parties to the cause whose residences are unknown, or who are themselves wholly unknown, and for the information and protection of all parties to the cause who are minors or who are suffering from some other legal disability, and for the information and protection of any and all persons who claim any right, title or interest in or to said property, who are unknown—whether named in the petition or not—that a copy of the petition, together with a copy of this order, be served on the Ordinary of Habersham County, Georgia, at least twenty

days before the date named for the hearing, and the Ordinary of said County is hereby appointed the Guardian ad Litem in his County as aforesaid, for the purpose of representing any and all such persons—whether named in the petition or not—who may claim any interest in or to said lands which are being condemned in this proceeding who may fail to respond. Let the Ordinary of Habersham County, when a copy of this petition and order has been served upon him as aforesaid, have leave to appear as Guardian ad Litem by this appointment and on behalf of such persons referred to above, and those who are named in the petition who may have any right, title or interest or claim of same, in any of the lands described in the condemnation proceedings, located in said County of Habersham, and prepare and file with the Clerk of this Court a return or response as to the persons or parties heretofore referred to, and particularly those who are named in the petition for such guardian ad litem to represent or appear for at this time and at such times as law and justice may require."

On April 1, 1938, the Ordinary of Habersham County, Georgia, filed a return in Action at Law 198 on behalf of "Any and all persons who claim any interest in said lands described in the petition in this cause, whether named in the petition or not, who may fail to appear and respond to this suit."

Verdict of the jury returned on April 26, 1938, in Action at Law 198, set forth a description of Bank of Clayton Tract No. 18, the same as that set forth in the petition, with the exception of the provision "(and more particularly delineated upon a map or plat marked Exhibit 'A' attached to the petition)."

On April 26, 1938, a judgment was entered in Action at Law 198 providing in part:

"Upon the rendition of the verdict in the above-entitled cause, it is

considered, ordered, and adjudged by the Court that upon the payment into the Registry of the Court by the United States of the sum of three thousand nine hundred and seventy-one and fifty-seven cents ($3,971.-57), thereupon the title to all the lands described in the petition and referred to in the foregoing verdict shall vest in fee simple absolute in the United States of America, * * * ".

On August 12, 1938, the United States paid into the Registry of the Court the amount of the award rendered by the jury in Action at Law 198, and on December ———, 1938, the Court entered an order in said action providing as follows:

"It appearing to the Court that a judgment was entered upon verdict in said cause on the 26th day of April 1938, and that on the 12th day of August 1938, the United States was vested with the title to the lands described in said verdict, by the payment into the Registry of the Court of the awards made, pursuant to the said verdict and judgment, it is

"Thereupon, considered, ordered, adjudged and decreed that title to the land described in the verdict has been divested from the former owners, claimants, lienors, and parties defendant, and has been vested in the United States of America, by the payment of the just compensation into the Registry of the Court, subject to all the conditions and reservations as set forth in said verdict and judgment."

At the time the defendant Ivie was a resident of Habersham County, Georgia. A warranty deed to her, dated August 6, 1935, from Joel W. Cash to some 186 acres of land, including 68 acres of land claimed by the Government, was recorded in the Clerk's office of the Superior Court of Habersham County, Georgia, on June 27, 1936, and was of record at the time the Government commenced its proceedings. Pearl Cash Ivie was not personally served with notice of the condemnation proceedings. The Tri-County Advertiser, the official gazette of Habersham County, Georgia, of Thursday, March 31, 1938, contains a published notice of the proceedings to condemn, directed to persons unknown who might claim an interest in the property. Mrs. Ivie had no actual notice of the advertisement or the proceedings and has claimed the property and paid the taxes thereon since 1935. The advertisement in the Tri-County Advertiser refers to the property simply by reference to the "Bank of Clayton Tract No. 18, Headright lands 442.48 acres, Center Hill District No. 752 G. M.".

None of the defendants participated in the award of condemnation made in said case.

The 442.48 acres as sought to be condemned by the Government did include 68 acres claimed by the defendant Ivie.

Joel W. Cash was the father of defendant Ivie. His father was also Joel W. Cash. Defendant Ivie testified that her father was known as Joel Cash prior to the death of his father, Joel W. Cash, in 1895 and that thereafter her father was known as Joel W. Cash.

In 1876 the State of Georgia granted to Joel Cash a tract of land containing some 432 acres which included the land now claimed by defendant Ivie. This grant was witnessed by J. W. Cash. Claimant's father, Joel W. Cash, was 24 years old in 1876 and he died in 1941.

Conclusions of Law

1. This being a suit of a civil nature brought by the United States, this Court has jurisdiction under the provisions of Title 28 United States Code § 1345.

2. In 1937–1938 the provisions of Title 40 United States Code Annotated § 257 and § 258 required a federal court to adopt forms and methods of procedure afforded by state law, but federal courts were not bound by state law on questions of substantive right. United States v. Miller, 317 U.S. 369(3), 63 S.Ct. 276, 87 L.Ed. 336.

3. The description of the property in the petition for condemnation, re-

ferred to a plat attached to the petition, was legally sufficient, and the verdict and judgment based thereon, by reference to the description in the petition, are also legally sufficient. Barber v. Housing Authority of Rome, 189 Ga. 155, 5 S.E.2d 425; Hoch v. Candler, 190 Ga. 390(4), 9 S.E.2d 622; 29 C.J.S. Eminent Domain § 322, p. 1360.

■ 4. The applicable state procedural law at the time is contained in Ga. Code, Chapter 36–3 and 36–11 which is cumulative to 36–3. These statutes provide notice to unknowns by publication of a citation in the official gazette. The Georgia courts have held that the citation so published shall describe the property sought to be condemned with the same particularity as that prescribed for a deed of conveyance. Glidden Co. v. City of Collins, 189 Ga. 656(2), 7 S.E. 2d 266; Gunn v. Georgia Power Co., 205 Ga. 85, 52 S.E.2d 449.

■ 5. The defendant insists that the description of the property in the published citation was fatally defective, that the defendant had neither actual nor constructive notice of the proceeding, and that the failure of the notice is jurisdictional, and that the defendant is not bound by the judgment of condemnation.

The Georgia law which provides that,

"Private property shall not be taken, or damaged, for public purpose, without just compensation being first paid." Ga.Constitution, Art. 1, Sec. III, Par. 1.

and the consequent holdings of the Georgia Courts (Parrish v. Glynn County, 167 Ga. 149(4), 144 S.E. 785; Pilgreen v. City of Atlanta, 204 Ga. 710, 51 S.E.2d 655) that the notice required under the Georgia Statutes (Ga.Code, § 36–1001 et seq.) to be given to the landowner is jurisdictional, and the statutory provisions as to the measure of compensation (Ga. Code, § 36–505, § 36–506) are matters of substantive law, and the federal court is not bound thereby. Miller v. United States, supra; Chappell v. United States, 160 U.S. 499, 512, 16 S.Ct. 397, 40 L.

Ed. 510; United States v. A Certain Tract or Parcel of Land, D.C.Ga., 44 F.Supp. 712(6), (7).

"The right or power of eminent domain is an attribute of sovereignty, inherent therein as a necessary and inseparable part thereof, and antedates, and therefore exists independently of, constitutions and statutes. All private property is held subject to the necessities of government. * * * The right of eminent domain underlies, and at the same time is superior to, all rights of private property. The Fifth Amendment is in recognition of this sovereign right, and instead of being a grant of power is a limitation on its use, viz, that just compensation be made. The amendment does not say when the compensation shall be made. Nor do the federal statutes invoked. In the absence of constitutional or statutory requirement the general rule is that pre-payment of the price is not necessary before the taking or occupation, if due provision for payment and for the means by which the landowner may make his claim and receive compensation for damages is made." United States v. A Certain Tract or Parcel of Land, D.C.Ga., 44 F.Supp. 712, 715.

■ 40 United States Code Annotated § 258, in effect in 1938, only requires that eminent domain proceedings "shall conform, as near as may be" to the practice, pleadings in the courts of the State within which the district court is held. And this requirement must give way whenever to adopt the State practice would be inconsistent with the terms, defeat the purpose, or impair the effect of any legislation of Congress. Chappell v. United States, 160 U.S. 499, 512, 16 S.Ct. 397.

"There can be no question but that the condemnation proceeding, which was a proceeding in rem, gave title to the United States good against the world, as well as against the Bruton heirs who were parties

to the proceeding. 'Such an exercise of eminent domain founds a new title and extinguishes all previous rights.' " Norman Lumber Co. v. United States, 4 Cir., 223 F.2d 868, 870.

Under the federal law,

"A condemnation proceeding is an action in rem. It is not the taking of rights of designated persons, but *the taking of the property itself.* Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216. When property is condemned the amount paid for it stands in the place of the property and represents all interest in the property acquired." Eagle Lake Improvement Co. v. United States, 5 Cir., 160 F.2d 182, 184.

The fact that the defendant Ivie was not a party to the proceeding, had no actual notice of same, and the further fact that constructive notice to her has not been shown, does not impair the title of the United States which it acquired in the in rem proceedings. 40 United States Code Annotated § 258(a); City of Oakland v. United States, 9 Cir., 124 F.2d 959; Norman Lumber Co. v. United States, supra; Eagle Lake Improvement Co. v. United States, supra; Cook v. State Highway Board, 162 Ga. 84, 102, 132 S.E. 902.

Since this Court holds that the United States has a good valid title to the land in question, it is not necessary to decide whether the defendant Mrs. Pearl Cash Ivie's claim to an interest in the land was valid. Rambo v. United States, 5 Cir., 145 F.2d 670; United States v. Patterson, 5 Cir., 206 F.2d 345, 348.

For the enforcement of her claim, if any she has, she may be relegated to her rights under the Tucker Act. 28 United States Code § 1491(4); Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637; Jacobs v. United States, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142; United States v. A Certain Tract or Parcel of Land, D.C.Ga., 44 F.Supp. 712, 715.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law, it is hereby

Considered, ordered and adjudged that the defendants, Mrs. Pearl Cash Ivie, Morgan Cotton, Thomas R. Sellers, Crawford Irvin, Shelton Gailey and Jack Irvin, be and they are hereby permanently restrained and enjoined from occupying, using, or cutting timber from the lands described in the petition herein and that the plaintiff, the United States of America, do have and recover of the defendants the sum of $410.10, plus costs of this action.